UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. No. 07-035 (RWR) |
| | : | |
| SUSAN L. JACKSON, | : | |
| | : | |
| Defendant | : | |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S
APPLICATION FOR AN ORDER PURSUANT TO
18 U.S.C. § 2703(b)(1)(B)(ii) and (d) AND
MOTION TO QUASH THE SUBPOENA**

Susan Jackson, through undersigned counsel, respectfully requests that this Court deny the government's application for the issuance of a court order, pursuant to 18 U.S.C. § 2703 (b)(1)(B)(ii); and further moves to quash the government's subpoena for non-content records pursuant to 18 U.S.C. § 2703 (b)(1)(B)(I). Further, Ms. Jackson requests a hearing on these issues.

**ARGUMENT**

On July 5, 2007, the government filed an Application for an Order Pursuant to 18 U.S.C. § 2703(b)(1)(B)(ii) and (d) and Notice of 2703(b)(1)(B)(I) Subpoena (hereinafter "Gov't App.") in an effort to obtain the records of Ms. Jackson's electronic communications. Ms. Jackson objects to the Government's Application and notice of subpoena for three reasons: 1) The Stored Communications Act, in particular 18 U.S.C. § 2703(a), does not allow the government to obtain a court order for e-mail communications in storage for less than one hundred eighty days; 2) The request is overly broad and extends beyond the scope of the Act; and 3) The Government's proposed method for protecting materials that are subject to the attorney-client privilege is

inappropriate and inherently biased.

I.      **18 U.S.C. § 2703(a) Preclude's the Government's Request for a Court Order for the Contents of Ms. Jackson's Electronic Communications Less than 180 Days Old**

Title 18, United States Code, Section 2703(a) provides that:

> **A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant**. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

18 U.S.C. § 2703(a). (Emphasis added).

The government is only requesting Ms. Jackson's electronic communication records from June 21, 2007 to the present. See Gov't App. pg. 6, ¶ 9; pg. 8, ¶ 12; Attachment A. This request is for material in storage for clearly less than one hundred eighty days and, therefore, the government's request under 18 U.S.C. § 2703(b) is misplaced. The statute provides in subsection (a), that the only means in which to obtain such information is through the issuance of a warrant using the procedures described in the Federal Rules of Criminal Procedure.

The government's failure to identify the correct statute to the Court is troubling -- while failing to point out the correct statute to the Court, the government relies upon an inapplicable statute. The government's omission of any mention of § 2703(a) is especially ironic in light of the government's claim that Ms. Jackson has attempted to mislead the Court.

**II.     The Government's Request for Information Extends Beyond the Scope of the Stored Communications Act**[1]

Title 18, United States Code, Section 2703 is part of the Electronic Communications Privacy Act of 1986 (a/k/a the "Stored Communications Act," hereinafter the "Act"). Section 2703(d) provides the requirements for a court order for customer communications or records in a remote computing service:

> A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers **specific and articulable facts** showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

See 18 U.S.C. § 2703(d) (emphasis added). As in consideration of any other search warrant, "[The task] is simply to make a practical, commonsense decision whether. . .there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Jones, 451 F. Supp.2d 71, 76 (D.D.C. 2006) (Judge Huvelle), quoting Illinois v. Gates, 462 U.S. 213, 238 (1983).

**A.     The Government Fails to Present "Specific and Articulable Facts" to Support Its Request**

In Jones, 451 F. Supp. 2d at 76, the Court approved the issuance of warrants for text messages when specific and articulable facts demonstrate probable cause of criminal activity. The government had submitted two sworn affidavits by an agent to demonstrate that the

---

[1] While 18 U.S.C. § 2703(b) is inapplicable to the government's request, as discussed above, even if the Court were to somehow find the government's request to come within that subsection, the government has not met the requirements of subsection (b).

defendants were using text messaging in furtherance of drug trafficking activities. Id. The affidavits supplied specific facts about the defendant's text message activity, which had increased dramatically during the relevant time frame sought by the government. Id. The court concluded that this information was sufficient probable cause for text message warrants. Id.

Unlike in Jones, the government has offered no affidavits or other relevant information to support its request for records of Ms. Jackson's electronic communications. The government references witness interviews by the Secret Service (Gov't App., p.5, ¶ 7), but provides no specific or articulable facts to suggest that electronic messages were exchanged between Ms. Jackson and these witnesses. The government refers to supposed information "suggesting" that Ms. Jackson sent text messages and e-mails to only one witness (Gov't App., pg. 4, ¶ 5). This assertion does not meet the requirements of specific and articulable facts even with respect to that one witness, never mind any other witnesses. Absent evidence or testimony that text messages or e-mails were exchanged between Ms. Jackson and these witnesses, there are no reasonable grounds to believe that such electronic communications exist or are relevant to the criminal investigation of obstruction of justice, as required by 18 U.S.C. § 2703(d).

The government's only basis in which it requests Ms. Jackson's electronic communications relates to a police witness, Lieutenant Waithe, whose e-mail communications with Ms. Jackson have already been submitted to this Court. See Gov't App. pg. 6, ¶ 8. At the sentencing hearing, on July 29, 2007, the government provided a copy of an e-mail written by Ms. Jackson to Lt. Waithe to this Court. Further, the government read, verbatim, the e-mail sent by Ms. Jackson to Lt. Waithe. See Sentencing Hearing Transcript, 6/29/07, pg. 11-13. It appears that Lt. Waithe has provided all e-mail communications between him and Ms. Jackson, as

evidenced by his full cooperation with the Secret Service agent investigating this case.

The government unreasonably summarizes that in light of Lt. Waithe's cooperation with the government, there are "reasonable grounds to believe, therefore, that records, other information, and the contents of text messages will include efforts to persuade him and others to accept the altered letter, and to accept them as if they had been written prior to June 22, 2007." See Gov't App., pg. 6, ¶ 8.  In addition, the government has offered **no specific and articulable** facts to suggest there are additional communications by Ms. Jackson that have not already been provided by Lt. Waithe (emphasis added).  In the absence of any evidence that Ms. Jackson participated in additional e-mail correspondence, there are no reasonable grounds to believe the existence of such communications or their relevancy to the criminal investigation, as required by 18 U.S.C. § 2703(d).

      **B.**      **Appendix A Demonstrates the Overly-Broad Nature of the Government's Request**

In its Application, the Government specifically enumerates the information requested in Appendix A.  It seems that the specific information sought by the government in Section A of Attachment A, is lifted straight from 18 U.S.C. § 2703 (c)(2).  The request includes a variety of information not even mentioned in the Government's Application, that is irrelevant and beyond the scope the government's request.  The government's Attachment, Part A, requests the following for account number (301) 325-2737:

    1.    name(s) and address;
    2.    address(es);
    3.    records of session times and durations;
    4.    length of service (including start date) and types of service utilized; and

      5.    the means and source of payment for such service (including any credit or bank account number)

See Gov't App., Attachment A, Part A. To begin, the meaning of "address(es)" is unclear in #2, and also appears to be a redundant request from #1. Additionally, the Government provides no specific or articulable facts to support its request for records of session times, durations, length of service, type of service utilized, or means and source of payment (#3-5). There is no information presented in the Application to support a request for this information. The Government has not explained why the recovery of this information would have any relevance to the allegation that Ms. Jackson has obstructed justice.

      Similarly, in Attachment A, Part B, the Government requests a variety of information that is, again not stated in the Government's Application, but is also irrelevant and beyond the scope of the government's request in light of its investigation of obstruction of justice. In particular the government requests the connection logs from the account of (301) 325-2727, which should contain the following information:

      1.    Connection time and date;
      2.    Disconnect time and date;
      3.    Any other relevant routing information;
      4.    Source or destination of any text messages sent from or received by the account, and the date, time, and length of the message; and
      5.    Any address to which electronic mail was or is to be forwarded from the account or e-mail address.

See Gov't App, Attachment A, Part B. The Government has provided no specific or articulable facts showing reasonable grounds to believe any of the information above is relevant to the investigation, nor has the government provided any statutory or legal authority for the basis of

this request.

  Finally, in Attachment A, Part C, the Government requests:

> Any address books and/or Buddy lists associated with the accounts identified in Part A, and the contents of electronic communications that have been opened at any time after 6/21/07 up through and including the date of this Order.

<u>See</u> Gov't App., Attachment A, Part C. The Application references no such address books or Buddy lists. There is no absolutely no specific or articulable fact that would provide reasonable grounds to believe this information is relevant to the government's investigation of obstruction of justice. The lists of e-mail addresses contained in Ms. Jackson's email account is wholly irrelevant to the issue of whether or not she obstructed justice with regards to the letters submitted at sentencing by means of electronic communications. This type of information sought by the government is overly broad and is supported by no legal or statutory authority.

**III. Attorney-client Privilege Will Not Be Protected by a "Taint Team" of Government Agents**

  As discussed above, this Court should deny the Government's Application due to the inapplicability of the statute upon which the government's relies, 18 U.S.C. § 2703(b), in addition to the absence of specific and articulable facts that Ms. Jackson's electronic communications are relevant to the investigation of obstruction of justice. In the event, however, that this Court allows for the issuance of a warrant pursuant to the Federal Rules of Criminal Procedure, measures must be taken to ensure the protection of records covered by the attorney-client privilege. Undersigned counsel has advised the government, that there are numerous e-mail communications between Ms. Jackson and her counsel.

In the government's pleading, the government proposes the concept of a government-led "taint team" as an inappropriate remedy for this situation. First, the government claims that is should be able to review all "the material, remove any documents that even arguably appear to be communications between the defendant and her counsel, and review those materials further [sic] any crime/fraud exception to the privilege." (Gov't App., pg. 7, ¶ 11). Putting aside the fact that it is difficult to understand what the government means by "arguably," it is outrageous for the government to suggest that is should be able to review attorney-client communications for crime fraud materials. There has not even been a limit of any such communications in the present case, nor could there be. The government fails to cite to any authority or any justification to read attorney-client communications. In fact, the law clearly does not allow such unfettered access. As the D.C. Circuit recently explained:

> To overcome a claim of privilege, the government must "make a prima facie showing of a violation sufficiently serious to defeat the privilege;" such a "violation is shown if it is established that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme;" and the government's burden of proof is satisfied "if it offers evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud."

In re Grand Jury, 475 F.3d 1299, 1305 (D.C. Cir 2007). In Grand Jury, the government submitted a detailed affidavit setting forth why the crime fraud exception applied. The government has made no such showing in the present case nor could it.

The government's bald assertion that it can rummage through attorney-client communications is contrary to the law. Once again, the government's decision to fail to inform the Court of the applicable law is disconcerting. If the Court issues an order under § 2703, which

it should not, any communications to/from Ms. Jackson and her counsel should be excluded before any material is provided to the government.

In addition, "taint team" (a/k/a/ "filter team") is the term established by the Department of Justice to signify a group of government lawyers whose actions are "walled off" from the prosecution team to avoid exposure of privileged information. See United States v. Neill, 952 F. Supp. 834 (D.D.C. 1997). In this case, the government proposes a "taint team" composed of Assistant United States Attorney Laura O. Ingersoll, and another, unnamed, government agent to review Ms. Jackson's electronic communications. See Gov't App. pg. 7, ¶ 11. This "taint team" will be inherently biased if comprised of these government representatives, since the government is party to this case. In order to avoid this potential conflict, Ms. Jackson requests that this Court appoint a neutral, Special Master with no ties to the Department of Justice.

The United States District Court for the District of Columbia has considered the issue of "taint teams" in two separate cases. In Neill, Judge Joyce Hens Green discussed and permitted the government's use of a "taint team" to minimize intrusion into documents covered by attorney-client privilege. Id. at 836. However, the court made special note that, "[n]o litigation directly resulted from the taint team's review because the defendants never filed any motions for a protective order or under Rule 41(e). . ." Id. at n 4. Therefore, although the use of a "taint team" was allowed, the court did not specifically endorse this practice, absent objection from the defendant.

More recently, Judge Robertson considered the argument that "taint teams" are judicially disfavored. See Hicks v. Bush, 452 F. Supp. 2d 88, 102 (D.D.C. 2006). In Hicks, the

9

Government sought to review documents seized from detainees as part of an investigation of the deaths of three Guantanamo detainees. Id. at 94. The Government proposed the use of a "filter team" to set aside the detainees' materials protected by attorney-client privilege. Id. The court cited and reviewed federal cases where courts have rejected the use of these "filter teams." Id. at 102, discussing United States v. Stewart, 2002 WL 1300059 (S.D.N.Y. June 11, 2002) (rejecting government's proposal for "privilege team" and appointing a Special Master to filter the material); In re Grand Jury Subpoenas 04-124-03 and 04-124-05, 454 F.3d 511, 523 (6th Cir. 2006) (concluding that taint teams "pose a serious risk to holders of privilege."). In Hicks, no alternative to the "filter team" was proposed, so the court allowed the Government's proposal. Id. at 102. The court explained that the appointment of a Special Master or pre-screening by counsel would not be appropriate alternatives, due to the voluminous nature of the materials to be reviewed. Id. The court noted the unique nature of the Hicks case, which presented logistical obstacles "unlike that of any case that has been cited to me." Id. As in Neill, the Hicks decision permitted, but did not endorse, the use of "taint teams."

Unlike Hicks, the information requested by the government in this case involves records of electronic communications by one individual during a limited period of time. As articulated by the government in its request for the contents of text messages, "[C]ompliance can be accomplished within days and does not appear to be unduly burdensome." See Gov't App. pg. 6, ¶ 9. There is no reason to believe the materials will be too voluminous to appoint a Special Master to filter the privileged records. The presence of a Special Master or other neutral, third-party would ensure protection of attorney-client privilege, which "promote(s) broader public interests in the observance of law and administration of justice." See Upjohn Co. v. United

States, 449 U.S. 383, 389 (2001).

## CONCLUSION

The government's Application for an Order pursuant to 18 U.S.C. § 2703 fails to satisfy the criteria specified in 18 U.S.C. § 2703(a).  In addition, the government has failed to provide specific and articulable facts showing that there are reasonable grounds to believe the records and content of the electronic communications are relevant and material to their investigation of an allegation of obstruction of justice.  Therefore, Ms. Jackson objects to the government's Application and requests that this Court deny the proposed Order and Attachment, thereby quashing the Subpoena to Verizon Internet Services, Inc.  Further, Ms. Jackson requests a hearing on these issues.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Cr. No. 07-035 (RWR)** |
| | : | |
| **SUSAN L. JACKSON,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

Upon consideration of the United States' Application for an Order Pursuant to 18 U.S.C. § 2703 (b)(1)(B)(ii) and (d) and Notice of Subpoena, as well as the defendant's opposition thereto, it is by the Court hereby

**ORDERED** that the United States' application is **DENIED**.

_____
THE HONORABLE RICHARD W. ROBERTS
UNITED STATES DISTRICT COURT JUDGE