IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE UNITED STATES OF AMERICA :
                              :
                              :
            v.                :    Criminal No: 07-0035 (RWR)
                              :
                              :
SUSAN L. JACKSON,             :
                              :
            Defendant.        :

REPLY OF THE UNITED STATES TO THE DEFENDANT'S OPPOSITION
TO ITS APPLICATION FOR AN ORDER
PURSUANT TO 18 U.S.C. §2703(b)(1)(B)(ii) and (d)
AND NOTICE OF 2703(b)(1)(B)(i) SUBPOENA

The United States, by and through its attorney, the United
States Attorney for the District of Columbia, hereby replies to
the defendant's opposition to the application for the issuance of
a court order, pursuant to Title 18, United States Code, Section
2703(b)(1)(B)(ii), for the contents of retrieved wire and
electronic communications.  The defendant also opposes the
government's notice of the issuance of a subpoena for non-content
records, pursuant to Title 18, United States Code, Section
2703(b)(1)(B)(I).

The defendant primarily has two objections to the
government's requests: first, she contends that the government
incorrectly reads 18 U.S.C. §2703 by proceeding with that portion
of the statute that provides for notice to her; and second, she
objects to the government's proposal for review of the documents
by the utilization of a "taint team."  Both defense arguments are
without merit.

-2-

**A.  Court Order Pursuant to 2703(b)(1)(B)(ii) and (d)**

As set forth in its original notice to the defendant, the government is requesting an order requiring Cellco Partnership, d/b/a Verizon Wireless, to provide subscriber records and the contents of text messaging communications of the account designated (301) 325-2737.  The government requested a Court Order under §2703(b) (and *not* a search warrant, under §2703(a)), for the following reasons:

First, the manner in which the government made its request provided full notice to the defendant and accordingly, an opportunity to be heard by this Court as to any objections.  As the Sixth Circuit Court of Appeals recently stated, when notice is provided to the subscriber of communications services, there is no longer any requirement that the government proceed by search warrant.  "A warrant based on probable cause would not have been necessary had the government subpoenaed [the defendant] or given him prior notice of its intent to seek [a Stored Communications Act] order, because the need for this higher showing would be offset by his ability to obtain judicial review before producing any e-mails."  *See* Warshak v. United States, ___ F.3d ___, 2007 WL 1730094 (6th Cir. June 18, 2007) ("The same rationale would apply if the government subpoenaed a third party that had access to the content of the e-mails, and against whom

-3-

[the defendant] had no claim of privacy").[1]  The government

provided notice to the defendant here, both in open court and by

the filing of the very notice that occasioned the defendant's

opposition.

Second, the government seeks the contents of *opened*

communications, and §2703(a) -- to which the defendant cites in

her demand that the government should have proceeded (presumably

without notice to her) by search warrant -- only applies to

documents in "electronic storage," that is, *unopened*

communications.  The Stored Communications Act (18 U.S.C.

§§ 2701-2712) applies to "electronic communication," which has a

legal definition that explicitly distinguishes communications

generally from communications held in "electronic storage."  *See*

United States v. Councilman, 418 F.3d 67, 81 (1st Cir. 2005).

The law was deliberately structured to afford electronic

communications *in storage* less protection than other forms of

communication.  *See* Konop v. Hawaiian Airlines, 302 F.3d 868, 877

_____

        [1]  The Sixth Circuit went on to examine whether the
petitioner there had a legitimate expectation that its service
provider (as opposed to the addressees of the communications)
would release copies of e-mails.  Where the expectation of
privacy may be present, the Sixth Circuit suggested that a
probable cause standard controls the decision to order
disclosure.  The government does not agree that this part of the
Sixth Circuit opinion is correctly decided or applies in this
jurisdiction, but this Court need not reach the issue in any
event, because here, the government has demonstrated probable
cause.

-4-

(9th Cir. 2002), citing <u>Steve Jackson Games, Inc.</u> v. <u>United States Secret Service</u>, 36 F.3d 457, 462-64 (5th Cir. 1994).

"Electronic storage" is defined as:

> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
> (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

*Id.*, *quoting* 18 U.S.C. §2510(17).  The first part of the definition refers to messages that "sit in an e-mail user's mailbox after transmission but before the user has retrieved the message from the mail server."  *Councilman*, 418 F.3d at 81.  The government is not seeking any such communication, here; rather, we explicitly have requested only those communications that have been delivered, received and opened.[2]

The second part of the definition of "electronic storage" also does not apply to the government's request, because the government is not seeking content of a "communication by an electronic communication service;" rather, it seeks records of the more specific entity known as a "remote computing service."

> A remote computing service is defined by the statute as "the provision to the public of computer storage or processing services by means of an electronic communication system."

---

[2]    Attachment A to the proposed Order explicitly states that the contents of the provided communications "should NOT include any unopened outgoing or incoming electronic communications less than 181 days old."  *See* Attachment A to the proposed Order provided with the government's original pleading.

-5-

> 18 U.S.C. §2711(2). The term "electronic
> communication system" referenced in the
> definition in turn means, among other things,
> "any computer facilities of related
> electronic equipment for the electronic
> storage of such [electronic] communications."
> 18 U.S.C. §2510(14). By way of comparison,
> an electronic communications service is
> labeled as one "which provides to users
> thereof the ability to send or receive wire
> or electronic communications." 18 U.S.C.
> §2510(15).

Quon v. Arch Wireless Operating Company, 224 F. Supp. 1116, 1130

(C.D. Cal. 2006). In *Arch Wireless*, a case specifically

addressing, as here, the application of §2703 to text messaging,

the court agreed with the text messaging provider that

communications that had been received and opened, and that

thereafter remained recorded in the computer system of the

service provider, are covered by the definition of "remote

computing service." *Id.* at 1130-31.

> Absent the type of storage listed in section
> 2510(17), the only type of storage left
> available for a remote computing service to
> provide is long-term storage of
> communications not incidental to the
> transmission of the communication itself and
> not meant for backup protection. Arch
> Wireless' [text-messaging] service would meet
> that definition. The storage is long-term,
> is not incidental to the transmission of the
> communication itself, and is not meant for
> backup protection, but apparently as the
> single place where text messages, after they
> have been read, are archived for a permanent
> record-keeping mechanism.

*Arch Wireless*, 445 F. Supp. At 1136. There, as here, the content

of the text messages are not communications in transmission, or

-6-

communications stored for the purpose of backup protection;
rather, they are communications stored as archives.  Given that
the computer storage of text messages is considered a "remote
computing service" and not a communication "in electronic
storage," the government believes that it has properly requested
the content of the text messages under §2703(b) and not §2703(a).

In any event, the government believes that in proceeding
under §2703(b) in this case, it was placing its request before
the Court presiding over this matter and providing to the
defendant an opportunity to be heard.  Although the defendant
does not claim any prejudice as a result of the government's
application under §2703(b), to the extent that she could do so,
it can only be because the standard for a search warrant
(requiring, as it does, "probable cause") is higher than the
standard for a §2703(b) court order or subpoena (requiring only
"reasonable relevance"), *see Warshak*, at §III(B)(1), or because
she has some expectation of privacy that a third party provider
will not divulge the contents her communications.  *Id.* at
§III(B)(2).  Neither claim is valid here.  The government's prior
written and oral submissions have more than met the higher
standard of probable cause to obtain these materials, and to the
extent that the defendant has requested an even more fulsome
record, the government is submitting with this reply the
affidavit of Special Agent Jonas Balciunas of the U.S. Secret

-7-

Service.  This affidavit discusses re-interviews of the three witnesses whose accounts were proffered in court; additionally, it includes the results of the interviews of two additional witnesses, whose accounts also demonstrate that the letters the defendant submitted to the Court prior to sentencing were doctored.

Thus, even if a search warrant were required here, and the government by no means concedes that it is, the defendant is not prejudiced, since a sworn law enforcement officer has made specific averments, constituting probable cause, with judicial review through this application, demonstrating that the defendant may have committed the crime of Obstruction of Justice, in violation of Title 18, United States Code, Section 1512.

## B. Review by a "Taint Team"

The defendant opposes the government's proposed use of a "taint team" to segregate records that may be subject to a claim of attorney-client privilege; to review any such materials for the "crime-fraud" exception; and to submit materials of both categories, if any, to an unrelated judicial officer.

In her opposition, the defendant cites two cases from this jurisdiction, Hicks v. Bush, 452 F. Supp. 2d 88 (D.D.C. 2006) (Robertson, J.) and United States v. Neill, 952 F. Supp. 834 (D.D.C. 1997) (Hens Green, J.).  Contrary to the impressions advanced by the defendant, neither case disallowed or disfavored

-8-

the use of a government "taint" or "filter" team, albeit in circumstances different from those present here.  In both cases, procedures virtually identical to those proposed here were ordered and/or approved as having been performed efficiently and with "sensitivity."  <u>Neill</u>, 952 F. Supp. At 841, n. 14.[3]  The taint procedure proposed here is a commonplace, as well as a fair and economical solution to the modern-day complexities of searching computer records and communications, particularly in the corporate context, where communications with counsel are common.  The defendant has not set forth any issue that justifies a departure from this widely-accepted practice.

Finally, the defendant's "outrage[]" over the review for the crime-fraud exception is premature.  The *prima facie* showing of a violation must wait until the taint team has completed its review and has determined that there are any such documents falling into that category.  *See* Defendant's Opposition at page 8, citing <u>In re Grand Jury</u>, 475 F.3d 1299, 1305 (D.C. Cir. 2007).  In any event, undersigned counsel will not be part of that discussion.

---

[3]    In *Neill*, a hearing was held, after specific allegations were made that taint agents conducting a search had seized materials beyond the scope of the warrant.  *Id*. At 836.  While the government does not believe that a hearing is required here, AUSA Ingersoll is available to the Court, should the Court later seek to create a more complete record.

-9-

## C.  **The Subpoena for the E-mail Transaction Logs**

As noted in the government's original notice, it has issued a subpoena to Verizon Internet Services, Inc., for the transaction logs and other non-content information regarding the defendant's e-mail account.  That subpoena has been served and no notice was ever required.  The government only included it in its original pleading to advise the Court that this internet provider had advised the government that it no longer had materials with the *content* of the defendant's communications.

With respect to the subpoena, §2703(c)(2) expressly permits the government to obtain by subpoena specific information from the e-mail carrier, including:

> (A) name;
> (B) address;
> (C) local and long distance telephone connection records, or records of session times and durations;
> (D) length of service (including start date) and types of service utilized;
> (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and
> (F) means and source of payment for such service (including any credit card or bank account number).

18 U.S.C. §2703(c)(2).  The defendant appears again, to misunderstand the nature of the government's request, in that she apparently believes that the requested Court Order for the records of Cellco Partnership, Inc., d/b/a Verizon Wireless is the same as the subpoena that we have served upon Verizon Internet Services, Inc.  In any event, the subpoena has issued,

-10-

and as stated in the original notice, the government has been
advised that the response will not produce any records that
include the content of communications.  It is the government's
position, therefore, that:  a) the defendant has not and cannot
cite a basis to quash the subpoena under 18 U.S.C. §2703; and b)
the attorney-client privilege does not attach to subscriber and
transactional information.

* * * * *

    WHEREFORE, the United States respectfully requests that the
Court: A) grant the government's application and issue the Order
to Cellco Partnership, d/b/a Verizon Wireless; B) deny the
defendant's request for a Special Master; and C) deny the
defendant's motion to quash the subpoena to Verizon Internet
Services, Inc.

                    Respectfully Submitted,

                    JEFFREY A. TAYLOR
                    UNITED STATES ATTORNEY
                    D.C. Bar Number 498610

                            /s/
        By:
            _____
                    BARBARA E. KITTAY
                    D.C. Bar Number 414216
                    Assistant U.S. Attorney
                    555 Fourth Street, N.W., Rm. 4846
                    Washington, D.C.  20530
                    Tel. (202) 514-6940
                    Barbara.Kittay@usdoj.gov

<u>AFFIDAVIT IN SUPPORT OF PROBABLE CAUSE</u>

I, JONAS BALCIUNAS, Special Agent (SA) with the United States Secret Service (USSS), Washington Field Office (WFO), Washington, D.C. (hereinafter affiant), being duly sworn, depose and state as follows:

1.    I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.    I have been a Special Agent with the USSS since June of 2005.  I have been assigned to the Washington Investigative Team since March of 2006, and have participated in approximately 100 investigations, during that time.  As part of my duties I was assigned to investigate the theft of funds from a company called "Pundit Productions," an investigation that ultimately resulted in a guilty plea by the individual named Susan L. Jackson.

3.    The information contained in this affidavit was obtained by me and other law enforcement officers.  This affidavit is in support of a probable cause finding that evidence of Obstruction of Justice, in violation of Title 18, United States Code, Section 1512, exists in the electronic communications of Susan L. Jackson, located in account "sljack21@verizon.net" and the text messages associated with account (301) 325-2737.  The facts and

-2-

information contained in this affidavit are based on my personal
knowledge, witness interviews, and my review of documents, and
materials containing the observations of others involved in this
investigation.  This affidavit contains information necessary to
support probable cause, and is not intended to include each and
every fact and matter observed by me or known to the government.

4.  On June 22, 2007, defendant SUSAN L. JACKSON, through
counsel, filed a sentencing memorandum that purported to attach
supportive letters of numerous friends, relatives and employers,
the Sentencing Memorandum was docketed as "Document 12" and the
letters were attached at Exhibits 3 and 7, all of which were
reviewed by this affiant.

5.  On June 27, 2007, the government filed a supplemental
memorandum in aid of sentencing that made representations to the
Court regarding the authenticity of the letters referred to in
paragraph (4), above.  The government's supplemental memorandum
was docketed as "Document 13" and was reviewed by this affiant.

6.  The following day, the defendant's attorney filed a
supplemental pleading that admitted to some of the discrepancies
in the letters but attempted to set forth innocent circumstances
under which the letters may have been submitted to the Court.
This pleading was docketed as "Document 14" and reviewed by this
affiant.

7.  On June 29, 2007, at the sentencing hearing held before

-3-

this Court, I was present and heard the prosecutor proffer evidence in support of the government's contention that various of the letters referred to in paragraph (4), above, had been doctored. Moreover, the prosecutor proffered information suggesting that subsequent to the filing of its supplemental pleading, the defendant had sent text messages and emails to one of the witnesses (Witness #1, below) regarding the discrepancy in the letter written by the witness and the letter filed with the Court, communications that the witness believes were intended to persuade him to accept the altered letter.

8.  At the conclusion of the hearing, the Court set the date of September 14, 2007, for an evidentiary hearing.

9.  Since the hearing, I have interviewed at least five witnesses, three of whose letters were presented to the Court on June 29, 2007, as having been altered, and two additional witnesses, as set forth below:

A.  Witness #1: Witness #1 is a police officer, who reported to me that he initially agreed to and did write a letter on the defendant's behalf, prior to June 22, 2007. We discussed the letter he wrote, which is *not* the letter the defendant submitted to the Court as an exhibit with Document 12. It is, however, identical to the letter the defendant submitted to the Court as an exhibit to Document 14. The differences between the versions of the letter are

-4-

substantial. For example, Witness #1 did not say, or
authorize the defendant to change his letter to say that he
had known her for "many years," that she had "many jobs,"
that he and others knew her and her children in the
community, or the following:

> [Many officers] have worked with her on
> several occasions (consulting) and respect
> her authority and business mind.
>             . . .
> Judge, as a Police Officer for over two
> decades, I truly believe Mrs. Jackson would
> not ever think of doing any type of crime in
> her lifetime after going through this. I
> have an entire Forest Heights Police
> Department behind her and in closing, Judge
> Roberts, please consider an appropriate
> sentence for Mrs. Jackson.

Indeed, Witness #1 told this affiant that he did not at any
time authorize any changes to his letter. He told the
prosecutor that sometime after he was contacted by her, he
started receiving text messages (from (301) 325-2737) and
emails from the defendant (from "sljack21@verizon.net"),
displaying to him the letter with the changes and asking
him, for the first time, if he would authorize the changes.
He declined at all times to authorize any changes and is
angry that they were made without his consent.

B. <u>Witness #2</u>: Witness #2 was interviewed and told this
affiant that she, too, had agreed to and did draft a letter
on behalf of the defendant, prior to June 22, 2007. We
discussed the letter she wrote, which is *not* the letter the

-5-

defendant submitted to the Court as an exhibit with Document

12.  It is, however, identical to the letter the prosecutor

submitted to the Court during the hearing.  The differences

between the versions of the letter are substantial.  For

example, Witness #2 did not say, or authorize the defendant

to change her letter to say:

> Dear Judge Roberts: . . .
> She is one of my point of contact for the
> school, for this I trust her. . . .
> Over the years we have become close friends.
> Many talks, much support and tears have been
> shed between our families.  Through it all
> she has always been so strong.  I often
> wonder how she maintains with such graceful
> composure.
> Although I am aware of the incident that has
> leaded [sic] her into the court, it has not
> changed my feelings towards her.  I know that
> circumstances have placed her life where she
> is facing many trials and tribulations, but I
> have faith in Susan and her upcoming choices.
> I do believe with sincerity that she is
> remorseful.  We all make mistakes, some
> greater than many, but it's those who have a
> conscious, that want to change, to make
> amends.  I know through life we all have
> burned some bridges, and if I had a second
> chance to make amends, I still would.

Witness #2 told this affiant that she did not at any time

authorize any changes to her letter.  She told this affiant

that she is angry that changes were made without her

consent.  This affiant notes, as well, that to accomplish

the submission of Witness #2's altered letter, the

alterations would have had to have been cut and pasted back

onto Witness #2's letterhead, before sending it to the Clerk

-6-

of Court for docketing.

C.  <u>Witness #3</u>:  Witness #3 was not fully interviewed by
this Affiant, because she told me that she preferred to
speak only to the Court.  Witness #3 did, however, receive
service of a subpoena for the September 14, 2007 hearing and
commented briefly about three letters that defendant asked
her to sign on June 28, 2007, the day before the sentencing
hearing.  Witness #3 told this affiant that of the three
letters (all of which the defendant submitted to the Court
as exhibits to Document 14), she wrote only one.  When asked
which one, she replied, "You're a smart boy, you figure it
out."  This affiant notes that of the three letters, only
one is on letterhead; the one on letterhead is typed in a
different style of print; and the one on letterhead at least
appears to have been signed prior to June 28, 2007 (unlike
the other two versions, which were *only* signed on June 28).

C.  <u>Witness #4</u>:  Witness #4 was contacted by this affiant by
telephone.  She told this affiant that she had agreed to
write a letter in support of the defendant prior to June 22,
2007, and agreed to read to this Affiant from a copy that
she had retained.  Witness #4 read to this Affiant what she
represented to be the letter, but she did *not* read the last
portion of the version the defendant submitted to the Court
(specifically, "I would recommend probation with payment of

-7-

restitution.  Susan does not have any criminal history and I do believe in my heart these actions will not be repeated"). This affiant asked Witness #4 if she had written a sentence about "probation" and she hesitated before answering in the affirmative.  When asked to read *that* sentence, Witness #4 refused, and abruptly terminated the interview.  She also refused this affiant's request to meet for a more formal, in-person interview, but has since been served with a subpoena for the September 14, 2007 hearing.

E.  <u>Witness #5</u>:  Witness #5 also told this Affiant that he agreed to write a letter on behalf of the defendant, prior to June 22, 2007.  He said he did not have a copy, but he remembered putting his signature on a letter the defendant had drafted for him.  I showed him the letter submitted to the Court, and he said he did not remember addressing the letter to "Judge Roberts," moreover, he believes that only the first two paragraphs were in the original letter, and the remainder was *not* in the letter he gave to the defendant.  The part that he believes was added, says:

> Regardless of the current circumstances, I
> believe that she will put forth with extreme
> effort in restoring her dignity and make
> amends as directed by Your Honor.  I don't
> see her repeating any kind of criminal acts
> in the future, but turning the situation into
> something to learn from.  My recommendation
> would *[sic]* probation.

Witness #5 told this affiant that he did not at any time

-8-

authorize any changes to his letter.  He told this affiant
that on June 27, 2007, he received an email from the
defendant (a copy of which he provided), attaching the
doctored letter and stating the following:

> Darling – First things first, I want to thank
> you for supporting me during this trying
> time.  Attached is the edited letter
> submitted to my attorney.  All she needs you
> to do is call her or email her confirmation
> you consented to the letter.  Nothing else
> .... *[sic]* if you decide to call her please
> state to her as you did to me on the phone
> how you don't want this to effect *[sic]* your
> clearance in any way, she will assure you
> that this is not the case.  That the
> prosecutor, as in any case, is only trying to
> ruin my credibility.
>         * * *
> I would never put you in any kind of
> situation that would jepordized *[sic]* you
> well being and/or reputation.  FYI – this
> case has to do with a former employer.  I
> pleaded guilty to wire fraud, NOT
> embezzlement or any other sort, because I did
> authorize online transactions.  There may be
> a payment of restitution, but that has not
> been determined in court yet.
>
> It's crazy, and serious.  I owe you
> BIG...just please contact my attorney and
> confirm you wrote the letter.  That should be
> the end to that since court is on Friday.
>
> Thanks again, Z.
> "The truth is rarely pure and never simple."

He did not contact the defendant's attorney, as the
defendant had requested in her e-mail.

    10.  In court, on June 29, 2007, the defendant's counsel
represented that fourteen (14) letter writers had contacted her

-9-

after the prosecutor's allegations were made known to her, to say
that the letters filed on June 22, 2007, were the letters they
had written.  The prosecutor asked the Court for permission to
obtain e-mail and text messaging to determine if these other
witnesses, like Witness #1 (and now, as I have discovered,
Witness #5), were importuned to adopt changed letters as if they
had been originally written.

    11.  This affiant has examined the emails the defendant sent
to Witness #1 and has observed that they came from an email
address "sljack21@verizon.net."  The address from which Witness
#5 received his email is not apparent from the copy he provided.
The cellular telephone and text messaging account from which
Witness #1 reported that he received the defendant's text
messages is (301) 325-2737.  This affiant believes that there are
reasonable grounds to believe, therefore, that in connection with
these two communications services, there exist records, other
information, and the contents of text messages that will include
efforts to persuade Witness #1 and others to accept the altered
letters, and to accept them as if they had been written prior to
June 22, 2007.

    12.  Based on the above listed facts and circumstances, your
affiant respectfully submits that there is probable cause to
believe that the defendant has obstructed justice, in violation
of Title 18, United States Code, Section 1512(c), in that she

-10-

corruptly altered a record or document with the intent to impair
the object's integrity and availability for use in an official
proceeding, and that she otherwise obstructed, influenced and
impeded an official proceeding or attempted to do so, and that
evidence of this obstruction exists in the e-mail and text
messaging accounts she used to contact the witnesses in whose
names letters were submitted to the court.

/s/

_____
Jonas Balciunas
Special Agent
United States Secret Service


Subscribed and sworn to before me this ____ day of July, 2007.

/s/

_____
Notary Public