UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. No. 07-035 (RWR) |
| | : | |
| SUSAN L. JACKSON, | : | |
| | : | |
| Defendant | : | |

**RESPONSE TO GOVERNMENT'S REPLY
TO THE DEFENDANT'S OPPOSITION TO THE
GOVERNMENT'S APPLICATION FOR AN ORDER
PURSUANT TO 18 U.S.C. § 2703 (b)(1)(B)(ii)**

Susan Jackson, through undersigned counsel, respectfully submits the following response to the Government's Reply to Ms. Jackson's Opposition to the Government's application for the issuance of a court order, pursuant to 18 U.S.C. § 2703 (b)(1)(B)(ii). In addition, Ms. Jackson respectfully requests a hearing to resolve these issues.

**ARGUMENT**

In its reply, the government argues that 18 U.S.C. § 2703 (a) does not apply because the government asserts that the information sought - i.e. text messages - does not meet the definition of an "electronic communication in electronic storage" as stated in this section of the statute. As the government notes, there are two parts of the definition of electronic storage. See 18 U.S.C. § 2510 (17)(A) and (B) and § 2711(1) (incorporating Wiretap Act definitions into Stored Communications Act). It is the second part of the definition of electronic storage, see 18 U.S.C. § 2510(17)(B), which is defined as "any storage of such communication by an electronic communication service for purposes of back up protection of such communication" that applies in this case because the government is not seeking such communication defined in subsection A.

Electronic communication service is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." See 18 U.S.C. § 2510 (15).

In support of its argument, the government claims that the "content of the text messages are not communications in transmission, or are they communications stored for the purpose of backup protection; rather they are communications stored as archives." See Gov't Reply pg. 6. The government provides no information for the basis of this conclusion. Nor does the government provide any information that Cellco Partnership, d/b/a Verizon Wireless, has determined that any text messages associated with Ms. Jackson's account are stored as archives. See Theofel v. Farey-Jones, 359 F.3d 1066, 1075 (9th Cir. 2004) (e-mail messages on ISP's server were stored for purposes of backup protection).

Rather, the government believes that 18 U.S.C. § 2703 (b) applies to their request because the information sought meets the definition of an "electronic communication in a remote computing service." The government cites to Quon v. Arch Wireless Operating Company, 445 F.Supp.2d 1116 (C.D. Cal. 2006) for the proposition that text messages are covered by the definition of a "remote computing service." Id. at 1130. In Arch Wireless, the dispute centered around "whether the service provided by Arch Wireless - that is, of being able to retrieve for its subscribers text messages that have been sent over its communication network and are held in long-term electronic storage on its computers - constitutes a remote computing service or, rather, is more properly characterized as an electronic communication service." Id. The context of this analysis centered around whether governmental defendants can be civilly liable for violation of the Stored Communications Act. Id. at 1128-29. Further, the facts of that case are in apposite to the facts in this case.

Without any information, other than a bold conclusion, that the text messages sought by the government are not for purposes of a "back up," Ms. Jackson submits that the text messages sought by the government are in electronic storage, pursuant to § 2703 (a), and hence a warrant is required rather than the government's "belief" that text messages are in a remote computing service and therefore § 2703 (b) applies.[1]

Further, if this Court determines that these text messages sought by the government are contents of a "remote computing service" pursuant to 18 U.S.C. § 2703(b), the government has continued to fail to offer "specific and articulable facts to show there are reasonable grounds to believe that the contents of [the text messages] sought, are relevant and material to their investigation." Therefore, the requirements § 2703 (d) have not been met.

In its reply, the government submits a ten-page affidavit by a Secret Service officer assigned to this case. The information presented in this affidavit, relating to witnesses #1, #2, and #3, has been previously submitted to the court. The only new information presented in this affidavit relates to a witness identified as #4 and a witness identified as #5. With regard to Witness #4, the government - nor this affidavit - provides no information to suggest that Ms. Jackson had any e-mail or text messaging correspondence with this witness surrounding the accuracy of this witness's letter. Further, the government has served a subpoena upon this person to appear for the hearing on September 14, 2007. With regard to Witness #5, the government already has in its possession a copy of an e-mail from Ms. Jackson to this witness; as provided to

---

[1] Interestingly, in United States v. Jones, 451 F.Supp.2d 71 (D.C.D.C. 2006), the only reported case in this District Court regarding the acquisition of text messages by the government, the government sought text messages via warrant not via a court order pursuant to 18 U.S.C. § 2703.

the government from this witness. The government makes no assertion that there are additional e-mail or text message correspondence between this witness and Ms. Jackson. Therefore, it appears that the government already has in its possession all of the electronic communications between this witness and Ms. Jackson.

The government has made no showing of any "specific and articulable facts" that there any additional communications by Ms. Jackson to any witness that the government does not currently have in their possession. Clearly, the government is on a fishing expedition based upon mere speculation. The government has not offered "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." See 18 U.S.C. § 2703 (d).

If, however, the Court finds that § 2703 (b) applies to the text messages in this case and that the government can obtain them without a warrant or any showing of probable cause, Ms. Jackson submits that the statutory provisions authorizing the disclosure of electronic communications without a warrant and pursuant to the issuance of a court order, fails to conform to the constitutional requirements of the Fourth Amendment. The requirements of 18 U.S.C. § 2703(d) do not require probable cause, rather require a lower standard of reasonable grounds.

The Sixth Circuit recently held that when a third party is not expected to access the e-mails in the normal course of business, the party maintains a reasonable expectation of privacy, and subpoenaing the entity with mere custody over the documents is insufficient to trump the Fourth Amendment warrant requirement. Warshak v. United States, 2007 WL 1730094, *14 (6th Cir. June 18, 2007). The Warshak court also stated that "[i]ndividuals maintain a reasonable

expectation of privacy in e-mails that are stored with, or sent or received through, a commercial ISP. The content of e-mail is something that the user 'seeks to preserve as private,' and therefore 'may be constitutionally protected.'" Id. at *13; (citing Katz v. United States, 389 U.S. 347, 351 (1979). In further support of this privacy argument, the Warshak court also points out that other portions of the Stored Communications Act specifically prohibit unauthorized users from accessing e-mails and prohibit ISPs from disclosing e-mail content without the permission of the user. Id., see also 18 U.S.C. § 2701 and 2702.

  In sum, the requirements of the Fourth Amendment are not met by this statute because reasonableness is not probable cause. A warrant requirement should apply in this case. A court order based upon reasonable grounds does not equal a warrant based on probable cause.

  Finally, in its reply the government claims that a "taint team" is "commonplace" and "a widely-accepted practice," but offers no authority to support this conclusion. See Gov't Reply pg. 8. Although this "taint team" concept is endorsed by the Department of Justice and accepted by some courts, the use of government taint teams has often been questioned or outright rejected by the courts, as least in the context of criminal prosecutions. See In re Grand Jury Subpoenas, 454 F.3d 511 (6th Cir. 2006)(taint team inappropriate; special master appointed); United States v. Johnson, 362 F.Supp.2d 1043 (N.D. Iowa 2005) (court should err on the side of caution by appointing the outside taint attorneys); see also Klitzman & Gallagher v. Krut, 744 F.2d 955 (3d Cir. 1984); In re the Seizure of All Funds on Deposit in Accounts in the names of National Electronics, Inc., at JP Morgan Chase Bank, 2005 WL 2174052 (S.D.N.Y 2005); United States v. Abbell, 914 F.Supp. 519 (S.D. Fla. 1995); In re Search Warrant for Law Offices, 153 F.R.D. 55 (S.D.N.Y. 1994).

A fair procedure must be used in the context of reviewing attorney-client privilege materials. In <u>United States v. Stewart</u>, 2002 WL 1300059 (S.D.N.Y. 2002), the court stated that the "appearance of fairness helps to protect the public's confidence in the administration of justice and the willingness of clients to consult with their attorneys. As Judge Brieant explained, albeit in dicta, in <u>In re Search Warrant for Law Offices Executed on March 19, 1992</u>:

> reliance on the implementation of a Chinese Wall, especially in the context of a criminal prosecution, is highly questionable and should be discouraged. The appearance of Justice must be served, as well as the interests of Justice. It is a great leap of faith to expect that members of the general public would believe that any such Chinese Wall would be impenetrable; this notwithstanding the honor of an AUSA.

153 F.R.D. at 59; <u>see also</u> <u>Neill</u>, 952 F.Supp. At 834 n. 14 ("[T]here is no doubt that, at the very least, the 'taint team' procedures create an appearance of unfairness."). <u>See also</u> <u>United States v. Hunter</u>, 13 F.Supp.2d 574, 583 & n.2 (D.Vt. 1998) ("It may have been preferable for the screening of potentially privileged records to be left not to a prosecutor behind a 'Chinese Wall,' but to a special master or the magistrate judge.")(citing <u>In re Search Warrant for Law Offices Executed on March 19, 1992</u>, 153 F.R.D. 55, 59 (S.D.N.Y. 1994).

Further, the government asserts that any prima facie showing of a crime-fraud exception to the attorney-client privilege "must wait until the taint team has completed its review and has determined that there are any such documents falling into that category." <u>See</u> Gov't Reply pg. 8. It therefore appears that the government believes that all communications subject to the attorney-client privilege will be read by a member of the taint team first, and then a determination will be made if any such communications are not privileged due to the crime-fraud exception. The government fails to cite to any authority or any justification to read attorney-client

6

communications.  Once again, the government baldly asserts that it can review privileged materials which is contrary to law.  Apparently, the government misunderstands that the government must "make a prima facie showing of a violation sufficiently serious to defeat the privilege" before the court can sanction any type of screening process to determine if certain attorney-client communications are not privileged due to the crime-fraud exception.  In re Grand Jury, 475 F.3d 1299, 1305 (D.C. Cir. 2007).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Ms. Jackson respectfully moves this Honorable Court to deny the government's Application for an Order pursuant to 18 U.S.C. § 2703.  Further, Ms. Jackson requests a hearing on these issues.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500