UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
OCT 3 0 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal Action No. 07-0035 (RWR) |
| | ) |
| SUSAN L. JACKSON, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Following defendant Susan Jackson's guilty plea to wire fraud, Jackson filed with her sentencing memorandum third-party letters of support that the government suspects were doctored. The government has filed an application under 18 U.S.C. § 2703 for a court order for the records and contents of Jackson's text messaging communications, and issued a subpoena to Jackson's e-mail carrier for the non-content records of her e-mail account. Jackson has opposed the government's application and moved to quash the subpoena, arguing that the application fails to satisfy § 2703, and that any materials produced should be reviewed for privileged materials by a special master rather than the proposed government "taint team."

Because the government has met its required showing under § 2703 to obtain a court order for the contents and records of Jackson's text messages, the government's application will be granted. In addition, because the government has properly issued

- 2 -

a subpoena for Jackson's e-mail records, Jackson's motion to quash the subpoena will be denied. However, because reviewing the records obtained will likely be a minimal burden and having a magistrate judge conduct the review will remove any question of the appearance of bias, Jackson's request to appoint a special master to review the records will be granted.

## BACKGROUND

Jackson pled guilty to wire fraud after surreptitiously diverting funds from her employer's bank accounts to her own for months. Attached to Jackson's memorandum in aid of sentencing were letters from purported employers, friends, and relatives. (See Def.'s Sent. Mem. at Exs. 3, 7.) None of the letters was signed, and the government attempted to verify their authenticity by contacting the authors. While the people contacted acknowledged having written a letter, every correspondent with whom the government spoke disclaimed portions of the submitted letter. (See Gov't Supp. Mem. in Aid of Sent. ("Gov't Supp. Mem.") at 1.) In addition, none of the authors was aware of the nature of the conduct to which Jackson had pled guilty. Instead, some of the authors stated that Jackson's version of the offense was that she innocently participated in a fraud that was committed by her employer. (See id. at 2.)

The government filed a supplemental memorandum noting that several of the letters appeared doctored. In response to the

- 3 -

government's supplemental memorandum, Jackson filed a supplemental memorandum in which she admitted to some of the discrepancies in the letters but attempted to set forth innocent circumstances under which the letters may have been submitted to the court.  (See Def.'s Supp. Sent. Mem.)  At a hearing, the government proffered evidence that the letters had been doctored, and that after filing her supplemental memorandum, Jackson had sent text messages and e-mails to a witness regarding the discrepancy between the letter written by the witness and the letter filed with the court -- communication that the witness believed was intended to persuade him to adopt the altered letter.  After the hearing, a Secret Service agent interviewed additional witnesses whose letters Jackson had presented to the court.  Several questioned the authenticity of the versions of their letters that were submitted to the court.  One of the witnesses indicated that Jackson importuned him -- using text messaging and e-mail -- to adopt an altered letter.  (See Application of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(b)(1)(B)(ii) and (d) and Notice of 2703(b)(1)(B)(i) Subpoena ("Gov't Appl.") ¶¶ 7-8.)

The government argues that the information provided during the hearing and obtained during the witness interviews provides reasonable grounds to believe that the defendant may have committed an obstruction of justice, in violation of 18 U.S.C.

- 4 -

§ 1512(c) and (d).  As a result, the government now seeks an order under 18 U.S.C. § 2703(b)(1)(B)(ii) and (d) requiring Cellco Partnership, d/b/a/ Verizon Wireless, a cellular telephone and electronic communications service provider, to provide records, other information, and the contents of text messaging communications of Jackson's cellular phone account.  (See id. at 1.)  The government has also issued a subpoena under § 2703 to Verizon Internet Services, Inc., Jackson's e-mail carrier, for a "transactional log" of Jackson's e-mail account.  The government has arranged for any materials obtained to be reviewed by a "taint team" unrelated to this investigation composed of an Assistant United States Attorney and an agent who would "review the materials, remove any documents that even arguably appear to be communications between the defendant and her counsel, and review those materials [sic] further any crime/fraud exception to the privilege."  (See id. ¶ 11.)

Jackson argues that the court should deny the government's application for a court order for her text messaging records, and moves to quash the government's subpoena for the transactional log of her e-mail account.  (See Def.'s Opp'n to the Gov't Appl. ("Def.'s Opp'n") at 1.)  Furthermore, Jackson insists that even if an order issues and the subpoena is not quashed, the attorney-client privilege will not be protected by a taint team of

- 5 -

government agents, and a neutral, special master with no ties to the Department of Justice should be appointed.  (<u>See</u> <u>id.</u> at 7-9.)

### **DISCUSSION**

I.   COURT ORDER FOR TEXT MESSAGING CONTENTS AND RECORDS

Under the Stored Communications Act, 18 U.S.C. §§ 2701-2712,

> [a] governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection -- . . .
>     (B) with prior notice from the governmental entity to
>     the subscriber or customer if the governmental entity
>     -- . . .
>         (ii) obtains a court order for such
>         disclosure[.]

18 U.S.C. § 2703(b)(1).

Jackson claims that the government "provides no information for the basis of th[e] conclusion" that § 2703(b) is applicable to the government's request for the contents and records of her text messages.  (<u>See</u> Def.'s Resp. to Gov't Reply ("Def.'s Resp.") at 2.)  She insists that § 2703(a) applies instead, thereby precluding the government's request.  Section 2703(a) reads, in pertinent part,

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant . . . ."

18 U.S.C. § 2703(a).

Jackson urges that because the government's request is for "material in storage for clearly less than one hundred eighty

- 6 -

days," and is for a court order rather than a warrant, the request is impermissible under the Act.  (See Def.'s Opp'n at 2.) The government argues, however, that Jackson's reliance on § 2703(a) is misplaced because the government is not requesting communications in "electronic storage" under § 2703(a), but rather communications stored in a "remote computing service" as specified by § 2703(b).  (See Gov't Reply at 6.)

"Electronic storage" is defined, in relevant part, as "any storage of such communication by an electronic communication service[1] for purposes of backup protection[.]"  18 U.S.C. §§ 2510(17)(B), 2711(1).[2]  By contrast, a "remote computing service" provides storage that "is long-term, is not incidental to the transmission of the communication itself, and is not meant for backup protection but . . . as the single place where text messages, after they have been read, are archived for a permanent

---

[1] "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. §§ 2510(15), 2711(1).

[2] The parties agree that the statutory definition of "electronic storage" provided under 18 U.S.C. § 2510(17)(A) does not apply in this case.  (See Gov't Reply at 4, Def.'s Resp. at 1.)

- 7 -

record-keeping mechanism."[3]  See <u>Quon v. Arch Wireless Operating Co.</u>, 445 F. Supp. 2d 1116, 1136 (C.D. Cal. 2006).

Jackson argues the government has not properly requested communications stored in a remote computing service under § 2703(b) because it has done nothing more than offer "a bold conclusion[] that the text messages sought . . . are not for purposes of a 'back up.'"  (<u>See</u> Def.'s Resp. at 3.)  She further notes that the government has not provided any information that Verizon Wireless has determined that any text messages associated with her account are stored as archives.  (<u>See id.</u> at 2.)  No text in § 2703(b), however, requires a government showing that in requesting the electronic communications in a remote computing service, a provider will provide precisely that rather than electronic communications in electronic storage.  As long as the government complies with § 2703(b)(1)(B)(ii), which in turn mandates that the government's request be in accordance with § 2703(d) ("Requirements for court order"), an order may be tailored under § 2703(b) to ensure that the text messaging

---

[3] A remote computing service is defined by the statute as "the provision to the public of computer storage or processing services by means of an electronic communication system[.]" 18 U.S.C. § 2711(2).  The term "electronic communication system" referred to in the definition in turn means, <u>inter</u> <u>alia</u>, "any computer facilities or related electronic equipment for the electronic storage of such [electronic] communications[.]" 18 U.S.C. §§ 2510(14), 2711(1).

- 8 -

retrieval service used, if any, is indeed within the narrow definition of a remote computing service.[4]

Thus, the remaining question is whether the government has met its required showing under § 2703(d).  Section 2703(d) provides:

> A court order for disclosure under subsection (b) . . . may be issued by any court that is a court of competent jurisdiction and shall issue only if the government entity offers <u>specific and articulable facts showing that there are reasonable grounds</u> to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. . . .  A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

18 U.S.C. § 2703(d) (emphasis added).  In support of its request, the government submitted a Secret Service agent's sworn affidavit describing interviews of five witnesses, each of whom wrote letters on Jackson's behalf to the court.  In particular, the

---

[4] The fact that in <u>United States v. Jones</u>, 451 F. Supp. 2d 71 (D.D.C. 2006) -- the only reported case in this District regarding the acquisition of text messages by the government -- the government sought text messages via warrant and not via court order pursuant to 18 U.S.C. § 2703 does not effect this analysis.  As is explained in <u>Arch Wireless</u>, taking an "all or nothing" approach to classifying a text-messaging retrieval service is inappropriate because "[c]ertain aspects of . . . text messaging . . . [can be] the provision of purely electronic communications system, while others -- the retrieval of the contents of those text messages kept in *long*-term storage on its computer network *after* they had been received -- [can be] that of a remote computing service."  445 F. Supp. 2d at 1137 (emphasis in original).

affidavit details how Witness #1 said he "started receiving text messages [from Jackson's purported cell phone number] . . . displaying to him the letter [that Jackson submitted to the court] and asking him, for the first time, if he would authorize the changes. He declined at all times to authorize any changes and is angry that they were made without his consent." (See Gov't Reply, Aff. ¶ 9(A).)

Jackson retorts that the information provided in the affidavit with regard to some of the witnesses, including Witness #1, had already been submitted to the court, and nothing in the affidavit made any showing of any "specific and articulable facts" that there was any additional communications by Jackson to any witness that the government does not currently have in its possession. (See Def.'s Resp. at 3-4.) However, the fact that the government may already know of certain communications is no bar to it obtaining from a service provider the contents of the text messages under § 2703 to corroborate that evidence. "[U]nlike the Wiretap Act, the Stored Communications Act contains no express requirement that the government demonstrate necessity." United States v. Jones, 451 F. Supp. 2d 71, 76 (D.D.C. 2006). The affidavit provided by the government does offer the requisite specific and articulable facts -- at the very least with respect to Witness #1 -- which show that there are

- 10 -

reasonable grounds to believe that the contents of Jackson's text messages are relevant to the obstruction investigation.

Jackson argues alternatively that if the government can obtain the text messages under § 2703 without a warrant or any showing of probable cause, then the statute fails to conform with the constitutional requirements of the Fourth Amendment. (See Def.'s Resp. at 4.) That issue need not be reached, however, because there is sufficient probable cause to satisfy the Fourth Amendment. Probable cause to support a warrant exists when, "in view of the 'totality of the circumstances,' 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Gilliam, 167 F.3d 628, 633 (D.C. Cir. 1999) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Here, the record amply supports probable cause to believe that Jackson sent at least one text message in an effort to improperly influence her sentencing proceeding, and that the text message contains evidence that she altered materials submitted to the court in aid of sentencing, in violation of at least 18 U.S.C. § 1512(c).[5]

---

[5] That statute states:
(c) Whoever corruptly--
    (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
    (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
shall be fined under this title or imprisoned not more than

- 11 -

Because the government has offered specific and articulable facts showing that there are reasonable grounds -- and even probable cause -- to believe that the contents or records of Jackson's text messages are relevant to the ongoing criminal investigation of her potential obstruction of justice, and because Verizon Wireless has advised the government that it is willing to respond to a court order for the text messages and has given no indication that such production is unduly voluminous or burdensome (see Gov't Appl. at 3), the government has satisfied the requirements for a court order under 18 U.S.C. § 2703(d). Accordingly, the government's application for an order for any text messaging contents that are properly in a remote computing service will be granted.

II.  SUBPOENA FOR E-MAIL TRANSACTION LOGS

The government has issued a subpoena to Verizon Internet Services, Inc., for the transaction logs and other non-content information regarding Jackson's e-mail account.  That subpoena was lawful under 18 U.S.C. § 2703(c)(2).[6]  The government has been advised that the response to the subpoena will not produce

---

20 years, or both.

[6]  The government's application actually states that the government has issued a "[s]ubpoena pursuant to 2703(b)(1)(B)(i)."  However, because Jackson's e-mail carrier does not maintain records containing the content of e-mail communications, the subpoena should have been characterized as one pursuant to § 2703(c)(2).  The government's reply appears to correct this error.  (See Gov't Reply at 9.)

- 12 -

any records that include the content of communications (see Gov't Reply at 10), and under § 2703(c)(3), the government was not required to provide notice to Jackson regarding the subpoena. Accordingly, Jackson's motion to quash the subpoena will be denied.

III. TAINT TEAM

Jackson opposes the government's proposed use of a "taint team" comprised of an Assistant United States Attorney and an unnamed government agent to review Jackson's electronic communications for content protected by the attorney-client privilege. (See Def.'s Opp'n at 7.) Jackson argues that the "taint team" will be inherently biased if comprised of these government representatives since the government is a party to this case, and requests that the court appoint a neutral, special master with no ties to the Department of Justice. (See id. at 9.) The government responds that the use of a taint team is a "fair" and "widely-accepted practice" and that Jackson has not set forth any issue that justifies a departure from such a practice. (See Gov't Reply at 8.)

Federal district courts have expressed mixed views of the use of government taint teams in criminal proceedings. While some courts believe that "[t]he use of a taint team is a proper, fair and acceptable method of protecting privileged communications . . .," see United States v. Crim. Triumph Capital

- 13 -

Group, 211 F.R.D. 31, 43 (D. Conn. 2002), others insist that "reliance on the implementation of a [taint team], especially in the context of a criminal prosecution, is highly questionable, and should be discouraged." See In re Search Warrant for Law Offices Executed on March 19, 1992 and Grand Jury Subpoena Duces Tecum Dated March 17, 1992, 153 F.R.D. 55, 59 (S.D.N.Y. 1994).

Despite such wide-ranging views, there do appear to be some common factors courts consider when assessing the use of a government taint team.  First, "government taint teams seem to be used primarily in limited, exigent circumstances in which government officials have already obtained the physical control of potentially privileged documents. . . .  In such cases, the potentially-privileged documents are already in the government's possession, and so the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege."  See In re Grand Jury Subpoenas 04-124-03 and 04-124-05, 454 F.3d 511, 522-23 (6th Cir. 2006) (citing United States v. Abbell, 914 F. Supp. 519 (S.D. Fla. 1995)).  Second, use of a government taint team appears to be viewed more favorably when the lawfulness of the acquisition of the documents to be reviewed was not initially challenged. See United States v. Neill, 952 F. Supp. 834, 837 n.4 (D.D.C. 1997) (noting "[n]o litigation directly resulted from the taint team's review because the defendants never filed any motions for

a protective order"); see also United States v. Winters, No. 06-cr-54, 2006 WL 2789864, at *2 (S.D.N.Y. Sept. 27, 2006) (emphasizing that "[t]he documents in question were gathered during the execution of a search warrant whose lawfulness and manner of execution have not, to this point, been challenged"). Third, courts appear to be more willing to approve the use of government taint teams when there is a more extensive number of documents at issue. See Hicks v. Bush, 452 F. Supp. 2d 88, 103 n.12 (D.D.C. 2006) (stating that "[s]pecial masters are usually appointed when the materials for review 'are not voluminous'") (internal citations omitted); see also United States v. Grant, No. 04-cr-207, 2004 WL 1171258, at *3 (S.D.N.Y. May 25, 2004). Fourth, courts have given at least some consideration to the taint team's effect on the "appearance of fairness." See Neill, 952 F. Supp. at 841 n.14 ("[T]here is no doubt that, at the very least, the 'taint team' procedures create an appearance of unfairness."); see also In re Search Warrant for Law Offices Executed on March 19, 1992, 153 F.R.D. at 59 (insisting that "[t]he appearance of Justice must be served . . . . It is a great leap of faith to expect that members of the general public would believe that any such Chinese wall would be impenetrable; this notwithstanding our own trust in the honor of an AUSA").

Applying these four factors to Jackson's case, it appears that use of a government taint team to review the electronic

- 15 -

communications is not compelled in these circumstances. The government has yet to obtain control of the potentially privileged documents, unlike the "limited, exigent circumstances" described in <u>In re Grand Jury Subpoenas</u>. Moreover, the defendant has challenged the lawfulness of acquiring the documents to be reviewed prior to their retrieval. (<u>See</u> Def.'s Opp'n.) In addition, the government has already represented that Verizon Wireless could comply with the proposed order "within days and [compliance] does not appear to be unduly burdensome" (<u>see</u> Gov't Appl. at 6), suggesting that the records are not voluminous. Finally, given the fact that Jackson has objected both to disclosing the documents to be reviewed as well as using a government taint team, the appearance of fairness in using an independent reviewer would likely be heightened here, even though using government taint teams might otherwise be commonplace and fair. Erring on the side of caution, <u>see</u> <u>United States v. Johnson</u>, 362 F. Supp. 2d 1043, 1084 (N.D. Iowa 2005), I will appoint a magistrate judge to review the electronic communications disclosed under the court order and the government's subpoena.

### **CONCLUSION AND ORDER**

Because the government has met its requisite showing under 18 U.S.C. § 2703(d) to obtain a court order under § 2703(b) for the contents and records of Jackson's text messages, the

government's application will be granted.  In addition, because the government has properly issued a subpoena for Jackson's e-mail records under § 2703(c), Jackson's motion to quash the subpoena will be denied.  However, because having the records obtained under the court order and subpoena reviewed for privileged material by a magistrate judge should involve minimal burden and will best promote the appearance of fairness, the defendant's request to appoint special master to review the records will be granted.  Accordingly, it is hereby

ORDERED that the government's application [18] for an order under 18 U.S.C. § 2703(b)(1)(B)(ii) and (d) be, and hereby is, GRANTED.  An appropriate Court Order accompanies this Memorandum Opinion and Order.  It is further

ORDERED that defendant's motion to [20] to quash the subpoena be, and hereby is, DENIED.  It is further

ORDERED that the defendant's request [20] for a neutral special master to review for privileged communications the electronic communications contents and records obtained under the Court Order and subpoena be, and hereby is, GRANTED.  Under Local Criminal Rule 57.17(b)(2), this matter is hereby REFERRED to United States Magistrate Judge Alan Kay to review and remove or redact any attorney-client privileged communications from materials produced under the Court Order and subpoena, file the original privileged material under seal with the Clerk, and

- 17 -

thereafter provide to the government the remaining non-privileged material.  The government is directed to instruct Verizon Internet Services, Inc. to deliver the subpoenaed records to United States Magistrate Judge Alan Kay, United States Courthouse, 333 Constitution Avenue, NW, Washington, DC 20001.  The Clerk is directed to serve a copy of this Memorandum Opinion and Order upon Magistrate Judge Kay.

   SIGNED this ___30th___ day of October, 2007.

                                  _____
                                  RICHARD W. ROBERTS
                                  United States District Judge