UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**SUSAN L. JACKSON,**<br><br>Defendant. | Criminal No. 07-35 (RWR)(AK) |

REPORT OF SPECIAL MASTER

By an Order dated October 30, 2007, the Honorable Richard J. Roberts, United States District Judge, appointed the undersigned to act as a Special Master, pursuant to Local Criminal Rule 57.17(b)(2), to review electronic communications contents and records for privileged communications.

I. **Background**

After pleading guilty to wire fraud, Defendant Susan Jackson ("Jackson") submitted a memorandum in aid of sentencing and letters that purported to be from employers, friends and relatives. (Mem. Op. [23] at 2.) The government filed a supplemental memorandum noting that several of the letters appeared to be doctored. (*Id*.) In response, Jackson filed a supplemental memorandum in which she admitted to some of the discrepancies. (*Id*. at 3.) At Jackson's sentencing hearing, the government proffered evidence that the letters had been doctored and that Jackson sent text messages and e-mails to a witness regarding discrepancies between the

1

letter the witness had written and the letter filed with the Court in which Jackson sought to persuade the witness to adopt the altered letter. (*Id*.) Following the sentencing hearing, Secret Service agents interviewed additional witnesses, one of whom indicated that Jackson used text messages and e-mails to get him to adopt the altered letter. (*Id*.)

The government argued that based on this information it had reasonable grounds to believe that Jackson had committed obstruction of justice, in violation of 18 U.S.C. § 1512(c) and (d). (*Id*. at 4.) To investigate this alleged criminal behavior, the government filed an application for an order under 18 U.S.C. § 2703(b)(1)(B)(ii) and (d) that would require Cellco Partnership, d/b/a/ Verizon Wireless (hereinafter "Verizon"), to provide records and the contents of text messages for cellular telephone number (301) 325-2737. (Gov't Application [18] at 1.) Judge Roberts granted the government's application on October 30, 2007. (Mem. Op. [23] at 16.) In light of Jackson's concern that the subpoenaed records might contain attorney-client privileged material, however, Judge Roberts appointed the undersigned as a special master to review the records that Verizon subsequently produced and redact any privileged material. (*Id*.)

## II.     Findings of Fact

Verizon produced three sets of documents in response to the government's subpoena. First, Verizon provided subscriber information for the cellular telephone number (301) 325-2737. The documents indicate that this phone number is registered to Daymond Jackson.[1] The

---

[1] Although the phone number for which Verizon produced text messages is not registered to Susan Jackson, the undersigned reviewed all of the text messages as if any one of them might contain a communication between Jackson and her attorney. Additionally, there are messages that suggest that the person sending text messages from (301) 325-2737 is someone other than Daymond Jackson, to whom the account is registered. For example, on June 12, 2007 at 3:43 p.m. the person sending messages from the cellular telephone number in question writes "it's Z, Daymond's wife...please give him a call on his cell...."

subscriber information also included calling features and payment activity for that phone number.

Second, Verizon produced a package with the contents of text messages that were sent or received by cellular telephone number (301) 325-2737 between June 6 and October 31, 2007.[2] While a few of the messages make reference to Jackson's court case or meetings with her attorney, none of them appear to contain any communications between Jackson and her attorney.[3] For example, on June 6, 2007, at 3:11 p.m. the cellular phone number in question received a text message from cellular phone number (240) 687-8427 that asked "When is ur crt. date?" and approximately one minute later cellular phone number (301) 325-2737 responded "29th ." Approximately four minutes later, the person sending messages from (240) 687-8427 then asked, "Did u get all the letters u needed?  And what is ur atty. saying?" to which the person sending messages from (301) 325-2737 responded "I meet w/her on Friday." The undersigned did not locate any other text messages that appear to relate to Jackson's court case or that might constitute a communication between Jackson and her attorney.

Finally, Verizon produced transaction logs for Jackson's email address, sljack21@verizon.net.  The e-mail transaction log indicates the date and time that each e-mail was sent and the e-mail address of the recipient.  The pages of the transaction log that Verizon provided contain records of e-mails sent by Jackson between June 11 and July 9, 2007.  The log

---

[2] Verizon made no representations that the package produced reflected all text messages sent or received by (301) 325-8427.  The government's subpoena requested text message information from June 21, 2007 until the date of Judge Roberts' Order on October 30, 2007.  The messages actually produced cover the following dates (all in 2007): June 6, June 12-14, June 17, June 19, July 3-4, and October 23-31.  Whether any messages were sent or received on other days during this time period, and if so why Verizon did not produce them, is unclear.

[3] The undersigned was not provided with the cellular telephone number of Jackson's attorney and therefore could not determine whether any of the text messages in question were actually attorney-client communications.  Therefore the undersigned screened for privileged material by reviewing the contents of all text messages that Verizon produced and determining whether each message appeared to meet the definition of a privileged attorney-client communication.

shows thirty-three e-mails between Jackson and her attorney, Dani Jahn of the Federal Public Defender's Office, between June 13 and July 9, 2007. Verizon did not produce the contents of any of these e-mails.

### III.  Conclusions of Law

The attorney-client privilege shields from disclosure "confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 158 F.3d 1263, 1268 (D.C. Cir. 1998). *See also* Proposed Fed. R. Evid. 503(b) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself . . . and his lawyer . . . .").

The existence of a communication between a client and her attorney is not privileged, even if the content of that communication would otherwise be protected. *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir. 1980). *See also United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976) ("The attorney client privilege prohibits the disclosure of the *substance* of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice.") (emphasis added); *United States v. Kendrick*, 331 F.2d 110, 113 (4th Cir. 1964) ("It is the substance of the communications which is protected, however, not the fact that there have been communications."). Therefore the e-mail transaction log, which shows e-mail traffic between Jackson and her attorney, Dani Jahn, is not protected by the attorney-client privilege and should be turned over to the government.

Furthermore, the substance of a communication between a client and her attorney is not protected unless it was made "for the purpose of securing legal advice or services." *In re Lindsey*, 158 F.3d at 1268. Stated differently, communications that are not relevant to the client's legal problem are not shielded from disclosure by the attorney-client privilege. *See, e.g., United States v. Woodruff*, 383 F.Supp. 696, 698 (E.D. Pa. 1974) (holding that communications between attorney and client about the client's trial date did not involve the subject matter of the representation and therefore were not privileged). The undersigned did not locate any text messages that appeared to be both (1) between Jackson and her attorney and (2) for the purpose of securing legal advice or services. Therefore none of the text messages that Verizon produced are protected by the attorney-client privilege and should accordingly be turned over to the government. Similarly, the subscriber information for the abovementioned cellular phone account is not privileged because it does not reflect a communication between attorney and client. Therefore the subscriber information should be turned over to the government, as well.

**IV.    Conclusion and Recommendation**

Accordingly, the undersigned concludes that the materials produced by Verizon pursuant to the government's subpoena should be released to the government in their entirety.

Dated: November  30 , 2007                ___/s/_____
                                          ALAN KAY
                                          UNITED STATES MAGISTRATE JUDGE