**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 07-0035 (RWR) |
| v. | : | |
| | : | |
| SUSAN L. JACKSON, | : | |
| | : | |
| Defendant | : | |
| _____ | : | |

**GOVERNMENT'S SECOND SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this second supplemental memorandum in aid of sentencing, regarding the effect of evidence to presented at the hearing held on September 14, 2007 and evidence that we anticipate will be presented on December 19, 2007.

A. <u>Evidence of Obstruction</u>

The government's evidence clearly demonstrates that the defendant obstructed justice, principally by doctoring letters that she submitted in support of her position at sentencing. Specifically, the defendant added the following information: 1) the Court as the addressee of many letters; 2) reference to the defendant's status as a criminal defendant facing sentencing; and 3) an opinion that a sentence of probation was preferable to one of incarceration. It seems clear, from overall review of the alterations that the defendant made to these letters, that she had wilfully neglected to advise her witnesses of what she had done and why she was requesting a character reference.

-2-

A record of the defendant's obstruction was made on
September 14, 2007, and more evidence will be presented to the
Court at a continuation of the hearing, currently scheduled for
December 19, 2007.  Although the government has identified many
of the authors of the defendant's submitted letters, it was
unable to identify all.[1]  Set forth below is the evidence that
has been presented and a brief proffer of what we anticipate will
be the evidence presented at the continuation hearing:

1.  William Waithe is a lieutenant in the Forest Heights
Police Department, who testified on September 14, 2007.  He knows
the defendant because he eats at the restaurant where the
defendant works as a waitress and bartender (R-18).[2]  He
testified that he agreed to write a letter on the defendant's
behalf (which was presented as "Exhibit 1" and identified by the
witness), and that he did, in fact, make changes from an original
draft, at the defendant's request, including the addition of the
Court as the addressee.  When he was shown the version of the
letter that was sent to the Court ("Exhibit 2" at the hearing and

---

[1]    The government believes that the vast majority of the
letters are suspect on their face, in that they are unsigned and
contain little or no contact information that would permit
verification.  In addition, at least three of the letters (as set
forth in greater detail, below) contain the same, distinctive,
typographical error, calling them into question as well,
particularly given the totality of the evidence in this matter.

[2]    "R-__" refers to the transcript of the proceedings held
before this Court on September 14, 2007.

-3-

previously filed by the defendant as Docket Item 12-4, page 23 of

23), Lt. Waithe testified that he did *not* write (R-14) or

authorize (R-13-14) that version.  Specifically, the submitted

letter is changed as follows (the changed portions indicated by

strikeout and underlining):

> I have known Susan Jackson <u>and her family</u> for
> ~~two~~ <u>many</u> years ~~and her family~~.  Mrs. Jackson
> is a hard worker making and maintaining a
> life for her children, along with Mrs. [sic]
> Jackson.  The ~~two~~ years of knowing Mrs.
> Jackson she has always helped others ~~weather~~
> ~~it be~~ <u>whether it is</u> advice or emotional
> support.  While working at ~~her job~~ <u>one of her</u>
> <u>many jobs</u>, she takes on shifts that other
> workers cannot and will not take on.  Because
> of her strong character that she possesses,
> the customers respect her.  Mrs. Jackson,
> when not at work, she spends the time raising
> her children.  I have seen the children with
> her ~~on her days off when stopping by the~~
> ~~Sports Bar / Restaurant where she works~~ <u>many</u>
> <u>of days in the community on her off days</u>.
> Many officers ~~eat on and off duty at Mrs.~~
> ~~Jackson's place of work and know of her~~, <u>like</u>
> <u>me, know Mrs. Jackson and her family in the</u>
> <u>community, as well as, from her place of</u>
> <u>business.  Many officers, on and off duty,</u>
> <u>consort at Mrs. Jackson's place of business</u>
> <u>where we all have worked with her on several</u>
> <u>occasions (consulting) and respect her</u>
> <u>authority and business mind.</u>
>
> Judge Roberts as you know, "to human is error
> [sic]."  If anyone in my lifetime of forty-
> nine years of age needs a second chance,
> please let it be Mrs. Jackson.  Her heart and
> soul is good and kind.  We all pay for what
> we have done through ~~the~~ time~~,~~<u>.</u>  I believe
> what she has done <u>and/</u>or been charge<u>d</u> with,
> her ~~mine~~ <u>mind</u>, soul, consciences has punished
> her at the same time raising kids!

-4-

> Judge, as a Police Officer <u>for over two</u>
> <u>decades</u>, I truly believe Mrs. Jackson would
> not every think of doing any type of crime in
> her lifetime after going through this.  <u>I</u>
> <u>have an entire Forest Heights Police</u>
> <u>Department behind her and</u> in closing Judge
> Roberts, please consider an appropriate
> sentence for Mrs. Jackson.

It is clear from the alterations that the defendant was
creating an impression of greater personal familiarity, and
increasing the regard in which she is held by members of the
police department (including Lt. Waithe's authority to speak for
"an entire Forest Heights Police Department").  Lt. Waithe
testified that he learned of these alterations only after he was
contacted by the government (R-13), and thereafter the defendant
sent him e-mails and text messages in an effort to get him to
adopt the letter she submitted, which he refused to do,
particularly since much of the added information was false.[3]

The government notes, as well, that Lt. Waithe claims that
he never e-mailed his letter to the defendant (R-36), therefore
the defendant would have had to re-type the letter in its
entirety to accomplish her fraudulent alterations.

2.  <u>Mary Privatera</u> is the defendant's employer, who also
testified in this Court on September 14, 2007.  Mrs. Privatera
identified a letter dated April 22, 2007 ("Exhibit 6," belatedly

---

[3]  For example, Lt. Waithe has not been a police officer for
twenty years and he does not purport to speak for other members
of the Police Department.

-5-

filed by the defendant as Docket Item 14-2, page 6 of 6), as
having been written by her.  That letter, which contains the
letterhead of "Pizza-Italia," the restaurant the witness owns
with her husband, simply states:

> To Whom It May Concern:
>
> I have known Susan Jackson for a number of
> years.  Susan, her husband Damon, and their
> children are customers of mine.  In January
> 2006, she came to work for me.
>
> Susan is a bartender in our Sport's Bar.  She
> works our busiest shifts.  Susan is
> efficient, organized, and has excellent
> communication skills with the customers.  She
> has shown grace under fire many times.
>
> Susan is a trustworthy and reliable employee,
> who comes to work when scheduled and on time.
> She is a team player, ready to help out when
> asked.  She is an asset to our business.

Mrs. Privatera testified that she *did* write *this* letter, but
she did not write or authorize the letter the defendant submitted
prior to sentencing (Docket Item 12-8, page 2 of 7), nor did she
write or authorize an alternative version of the submitted
letter.  Both of the unauthorized letters curiously are dated
March 16, 2007; neither appears on letterhead.  *See* "Exhibits 7
and 8".  The first of the two additional letters merely sets
forth what purports to be the defendant's work schedule (*see*
"Exhibit 7").  The second (longer) unauthorized letter contains
the following additional text (underlined here to indicate that
it was added by the defendant):

-6-

> As an employer, I have, in a sense, adopted her into our close knit family. We all are very fond of her and her family. We have spoken intimately on several occasions and she has been very honest and upfront with this current situation, which I know was difficult but I admire. I can only imagine how hard this is for her but I know that she has this passion to make things better.
>
> Incarceration would only hinder her from her family and work. I know she holds several jobs, as well as, consulting because she is eager to start paying restitution. I have added to that with extra shifts to her schedule, as requested.
>
> I clearly believe she will continue to be an excellent employee, mother, wife and friend. My recommendation is probation.

Mrs. Privatera testified that she became aware of these letters only when she was contacted by the government (R-54), and when, thereafter (within a few days of a hearing scheduled for June 28, 2007), the defendant asked her to adopt the letters she had never seen (R-55-60). Although she admits that the defendant was able to persuade her to sign the letters at that time, Mrs. Privatera testified many of the assertions made in the letters were untrue or unknown to her (R-56-57); that she was completely unaware that the defendant was facing the possibility of incarceration (R-59); and she was not comfortable with the defendant attributing to her a letter she didn't write (R-58).

3. <u>Maynard Smith</u> testified that the defendant asked him for some kind of letter of recommendation in the early part of 2007 (R-76). Mr. Smith has his own business and it is his habit to

-7-

have individuals who request references to draft the letter and submit it for his consideration (R-76-77). Mr. Smith testified that soon after he communicated this to the defendant, he received a draft letter from her, addressed "to whom it may concern," which he corrected, signed and faxed back to the defendant (R-78). According to Mr. Smith, he learned later (when attorneys and a Secret Service agent called him) that a different, unauthorized version of the letter had been filed with the Court (R-78-81).

Mr. Smith was shown a copy of "Exhibit 9" (filed by the defendant as Docket Item 12-4, page 17 of 23), and he testified that he did not authorize this letter (R-80-82). The letter Mr. Smith authorized was not addressed "Dear Judge Roberts," and did not contain the following paragraph:

> Regardless of the current circumstances, I believe that she will put forth with extreme effort in restoring her dignaty [sic] and make amends as directed by Your Honor. I don't see her repeating any kind of criminal acts in the future, but turning this situation into something to learn from. My recommendation would probation [sic].

(R-79, 83). When questioned regarding the phrase "the current circumstances," Mr. Smith said he had not been made aware: 1) that the defendant had been charged with a crime; 2) that she had pleaded guilty; 3) that she had a criminal history; and 4) that she was facing possible incarceration (R-83). Mr. Smith testified that he was "not comfortable" with the fact that his

-8-

letter had been changed without his authorization (R-94).

4. <u>Sherelle Mitchell</u> appeared on September 14, 2007, but
did not testify because there was not sufficient time. She will
be subpoenaed to testify on December 19, 2007, and we anticipate
that she will testify as set forth below, although we note that
Ms. Mitchell initially was very cooperative in the government's
efforts to discover the circumstances of her letter, but has
become less cooperative since she was served with a subpoena.

Ms. Mitchell initially prepared a letter on the defendant's
behalf, using the stationery of her employer, the National Center
for Missing and Exploited Children (NMEC). When contacted by the
government in early September, she apologized for using the
stationery (because that was not authorized) and she expressed
astonishment concerning changes that had been made to her letter,
including the fact that her letter, which was addressed "To Whom
It May Concern," had been submitted to the Court (Docket Item
12-4, page 10 of 23) with the salutation "<u>Dear Judge Roberts</u>."
In addition, the letter the defendant submitted was changed as
follows (the additions are underlined):

> I have known Susan Jackson for the past six
> years. I can honestly say that she is a
> woman of dedication and determination. Susan
> and I have daughters that attend the same
> school in fourth grade and have been friends
> with one another since they were in Pre-K.
>
> Susan demonstrates a giving and generous
> nature all the time and she has been an
> excellent role model in her children's lives

-9-

> and also my daughter.  She demonstrates
> extreme patience and her corrections come
> with explanations the [sic] help them
> understand why it was necessary to what she
> was asking of them.  She has a huge heart for
> anyone and she makes you feel welcome at all
> times, regardless of whether or not her day
> is going well.  She is one of my points of
> contact for the school, for this I trust her.
>
> Over the years we have become close friends.
> Many talks, much support and tears have been
> shed between our families.  Through it all
> she has always been so strong.  I often
> wonder how she maintains with such graceful
> composer [sic].
>
> Although I am aware of the incident that has
> leaded her into the court, it has not changed
> my feelings towards her.  I know that
> circumstances have placed her life where she
> is facing many trials and tribulations, but I
> have faith in Susan and her upcoming choices.
> I do believe with sincerity that she is
> remorseful. We all make mistakes, some
> greater than many, but it's those who have a
> conscious [sic], that want to change, to make
> amends.  I know through life we have burned
> some bridges, and if I had a second chance to
> make amends, I still would.

On June 27, 2007, Ms. Mitchell faxed to the government a letter

addressed to this Court, requesting that the letter she wrote,

and the letter containing the additional representations both be

withdrawn.  In this letter, Ms. Mitchell states "Someone has

fraudulently placed in some information on my original letter

without my permission."  Letter of Sherelle Mitchell dated

June 27, 2007.[4]

---

[4]    The government notes, however, that after Ms. Mitchell

(continued...)

-10-

Finally, with respect to Ms. Mitchell, the government notes that the "amended" letter could not have been submitted to the Court unless the defendant literally cut the NCMEC letterhead from the old letter and pasted in onto the altered version. Ms. Mitchell did not produce the second letter; she has never seen it; and she does not have a copy. Indeed, just prior to the September hearing, Ms. Mitchell requested that the *government* provide her with a copy.

5. <u>Lola Stevens</u>: The final witness that the government has under subpoena is Lola Stevens, a friend of the defendant who now adamantly asserts that she authorized changes to her letter on behalf of the defendant, but has no copy and cannot recite them.

Ms. Stevens was contacted by U.S. Secret Service Agent Jonas

_____

[4](...continued)
was served with a subpoena for the September hearing, she protested in an email to the undersigned attorney, claiming that she was extremely "stressed out" by the prospect of having to appear in court. She claimed that she only then

> "vaguely remember[ed] giving Susan L. Jackson permission to rewrite my letter of character but I was unaware of the changes that were made to the letter until after being contacted by you. I do not agree with the crime that was allegedly committed. I was under the impression that minor changes of the letter would be made meaning the name of the judge and to give more details of Susan's character."

Email dated September 5, 2007, from Sherelle A. DeWitt. A copy of this and all follow-up email communication was provided to the defendant's attorney.

-11-

Balciunas on July 3, 2007.  She told the agent at that time that she wrote one letter, and agreed to read it to him.  At the conclusion of her recitation, however, she omitted the following: "I would recommend probation with payment of restitution.  Susan does not have any criminal history and I do believe in my heart these actions would not be repeated."  (Docket Item 12-4, page 16 of 23).

The witness could not explain these two sentences and became uncooperative when asked.  For that reason, the government has insisted that Ms. Stevens appear, to be placed under oath and questioned further about the circumstances of this letter.

6.  Miscellaneous Irregularities:  The government notes the following additional irregularities that call into question the authenticity of the sentencing exhibits the defendant filed as attachments to Docket Item 12:

First, the vast majority of the letters, particularly those with little or no verifying information, are typed in the same format -- single spaced, left-margin justified (including the signature portion) -- without letterhead, and in varying fonts.

Second, a great number of the letters note the defendant's palpable intention and effort to make restitution.  We challenge the credibility of these assertions, since the defendant appears to have made no effort to prepare for restitution (as set forth below), despite the passage of a great deal of time.

-12-

Third, at least three of the letters contain the same, unique typographical error:  each letter asks the Court to be "lineate," when it appears that the "author" is attempting to use the word "lenient."  *See* Docket Item 12-4 (letter of Velina Brown, page 4 of 23) and (letter of Aaron Manarin, page 21 of 23); Docket Item 12-8 (letter of Melanie Cass, page 5 of 7).  It seems unlikely that three independent writers made the same typographical error and more likely that these letters were written by only one person.

The government believes that there is more than sufficient evidence in the record upon which to base a sentencing enhancement for obstruction of justice, and to deny the defendant credit for acceptance of responsibility.

### B.  <u>Obstruction Enhancement under U.S.S.G. §3C1.1</u>

The defendant's alteration of her sentencing exhibits is a fraud upon the Court.  It is simply outrageous that the defendant believes she is entitled to falsify letters as she pleases and fill the public record with utter fiction.  This conduct fits squarely within the obstruction of justice enhancement (Section 3C1.1 of the United States Sentencing Guidelines (hereafter "U.S.S.G.")), which prohibits "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding" (Application Note

-13-

4(c)), and "providing materially false information to a judge or
magistrate" *(*Application Note 4(f)).

The cases interpreting the obstruction enhancement and its
application notes all find that it applies to materially false
letters presented at sentencing. *See, e.g.,* <u>United States</u> v.
<u>Roche</u>, 321 F.3d 607 (6th Cir. 2002).[5] It also applies to
materially false letters presented at other stages of litigation.
*See, e.g.,* <u>United States</u> v. <u>Brennan</u>, 326 F.2d 176 (3d Cir. 2003)
(obstruction enhancement appropriate where fabricated letters
were presented to the government as reciprocal discovery).[6]

---

[5]    Two unpublished opinions of the Ninth Circuit Court of
Appeals are also on point and although not binding, might assist
the Court in it's analysis. *See* <u>United States</u> v. <u>Dringle</u>, 43
Fed. Appx. 112, 2002 WL 1763564 (9th Cir. 2002) (enhancement for
obstruction is appropriate because "if [the court] had believed
the forged letter . . . to be true, this would have influenced
the outcome of the sentence"); <u>United States</u> v. <u>Schweitzer</u>, 14
Fed. Appx. 832, 2001 WL 767599 (9th Cir. 2001) (wilful submission
of materially false letters at sentencing, merits obstruction
enhancement). *But see* Fed. R. App. P. 32.1(a)(ii) (unpublished
opinions are not precedent unless issued after January 1, 2007);
D.C. Cir. R. 32.1(b)(2) (unpublished opinions of other courts may
only be cited for the purposes of the issuing court). *See also*
9th Cir. R. 36-3 (unpublished opinions are binding only as law of
the case); *but see* <u>Herring</u> v. <u>Teradyne, Inc.</u>, 256 F. Supp. 2d
1118 (S.D. Cal. 2002) (unpublished opinions of other Circuits
were "not binding, and at most were persuasive authority").

[6] There are also unpublished opinions on this point.  In
<u>United States</u> v. <u>Kilgarlin</u>, 157 Fed. Appx. 716, 2005 WL 3369890
(5th Cir. 2005), a defendant submitted fabricated documents to a
grand jury and the obstruction enhancement applied.  Similarly,
in <u>United States</u> v. <u>Coger</u>, 58 Fed. Appx. 575, 2003 WL 149848 (4th
Cir. 2003), false documents were given by the defendant to his
own attorney and even though they were not tendered to the court,
the obstruction enhancement was considered appropriate.

-14-

The government bears the burden of demonstrating that the defendant's obstructive acts were willful, *see,* <u>United States</u> v. <u>Cusack</u>, 66 F. Supp. 2d 493 (S.D.N.Y. 1999), but in cases involving fabricated documents, willfulness can be inferred. <u>United States</u> v. <u>Bonds</u>, 933 F.2d 152, 155 (2d Cir. 1991) ("Documents are fixed records, which are not normally altered or fabricated; thus, alteration of documents is itself evidence of an intent to deceive the court"), *distinguished on other grounds in* <u>United States</u> v. <u>Castano</u>, 999 F.2d 615, 617 (2d Cir. 1993). *Cf.* <u>United States</u> v. <u>Parrott</u>, 148 F.3d 629, 635 (6th Cir. 1998) (court must make specific findings that the defendant "*wilfully ... attempted* to obstruct or impede the administration of justice" in submitting falsified documents, and did not have some innocent purpose)(emphasis in original).

The defendant's willful attempt to obstruct and impede the Court at sentencing is amply demonstrated by the large effort expended to create and alter a great many letters, some of which had to be cut and pasted together for submission to the Court. In addition, the defendant's willfulness is demonstrated by her forceful and vigorous efforts to persuade the "authors" of the letters to adopt the changes she had unilaterally made.

Finally, the defendant's willfulness is demonstrated by the nature the alterations, consisting of two specific ideas: first, that the writer was aware of what the defendant has done; and

-15-

second, that the writer nevertheless believed that "probation with restitution" was more appropriate than incarceration.  Read without these alterations, these letters appear to be employment references -- no more.  Clearly, the defendant's friends and acquaintances were badly used by her.

The Court can infer from the absence of critical information in the original letters, that the defendant concealed from her friends and acquaintances the criminal conduct in which she engaged, the guilty plea she entered, and that her crime was considered to be so serious that she could be sent to prison. There is direct evidence that it was only after the defendant was caught that she approached her friends and asked that they help her cover-up the deception.  This effort is more than merely disgraceful:  it is a willful obstruction of the administration of justice.

## C.  Acceptance of Responsibility

In addition to the upward adjustment for obstruction, the government asks the Court to disqualify the defendant's credit for acceptance of responsibility.  Section 3E1.1 sets forth several factors the Court may consider in deciding whether a defendant is entitled to adjustment for acceptance of responsibility, and whether the Court should apply the adjustment where it has already determined that the defendant obstructed the administration of justice:

-16-

> Conduct resulting in an enhancement under
> §3C1.1 (Obstructing or Impeding the
> Administration of Justice) ordinarily
> indicates that the defendant has not accepted
> responsibility for his criminal conduct.
> There may, however, be extraordinary cases in
> which adjustments under both §§3C1.1 and
> 3E1.1 may apply.

U.S.S.G. §3E1.1, Application Note 4; *see also* <u>United States</u> v.

<u>Sayetsitty</u>, 107 F.3d 1405, 1410 (9th Cir. 1997); <u>United States</u> v.

<u>Lueddeke</u>, 908 F.2d 230, 235 (7th Cir. 1990).[7]

"Extraordinary" circumstances justifying the application of

both a downward adjustment for acceptance of responsibility and

an upward adjustment for obstruction of justice are quite rare.

*See, e.g.,* <u>United States</u> v. <u>Mangano-Guerrero</u>, 80 F.3d 398 (9th

Cir. 1996).  This is fairly intuitive since, as the Ninth Circuit

noted in *Mangano-Guerrero*, "[l]ying with the hope of avoiding a

degree of culpability or punishment is the very antithesis of

acceptance of responsibility."  *Id.* at 402.  *See also* <u>United</u>

<u>States</u> v. <u>Hopper</u>, 27 F.3d 378, 383 (9th Cir. 1994).

There is additional evidence in the record here, suggesting

that the defendant has not accepted responsibility.  First, as

---

[7]    Here again, there is helpful analysis in unpublished
opinions.  *See, e.g.,* <u>United States</u> v. <u>Eckard</u>, 62 Fed. Appx. 802,
804, 2003 WL 1900764 (9th Cir. 2003) (acceptance of
responsibility not applied because the defendant submitted
materially false documents to the probation officer and the court
in an effort to reduce his sentence); <u>United States</u> v. <u>Dringle</u>,
43 Fed. Appx. 112, 2002 WL 1763564 (9th Cir. 2002) (requisite
materiality is present because if the court "had believed the
forged letter . . . to be true, this would have influenced the
outcome of the sentence").

-17-

set forth above, it is clear that the defendant did not tell her
friends and acquaintances what she had done, because she --
*herself* -- had to add that part to the uninformed letters they
had written.  This duplicitous conduct far outweighs her
perfunctory admissions of guilt the defendant made in the
confines of the courtroom, or the claims of remorse that she has
not yet made in any setting.  *See* <u>United States</u> v. <u>Barry</u>, 961
F.2d 260, 267 (D.C. Cir 1992) (the defendant's public behavior
was inconsistent with acceptance of responsibility).

Second, and as set forth in our original memorandum in aid
of sentencing, the defendant has made no effort to prepare for
restitution.  While this may not be enough on its own, it is
egregious in this case, in the government's view, because the
defendant has added (or encouraged, in some fashion) bold and
disingenuous claims to the contrary to her sentencing letters.
The defendant has had over a year to save for the payment of
restitution and claims (by herself or through third parties) that
she has done so.  Nevertheless, the PSR notes that she has a
total of $157 cash on hand.  *See* PSR at ¶65.  It is the
government's view that the defendant's hollow expression of an
intent to make restitution is just one more element of her fraud
upon her victim and the Court.

-18-

### D.  <u>Adjusted Guidelines Range</u>

Based on the arguments presented herein, the government asks the Court to apply the obstruction enhancement, to deny the adjustment for acceptance of responsibility, and to sentence the defendant to incarceration within a range of **18 to 24 months**, calculated under the U.S.S.G. as follows:

- The base level offense for violation of a 20-year maximum fraud statute is 7 (§2B1.1(a)(1));

- 6 levels are added for loss greater than $30,000 but less than $70,000 (§2B1.1(b)(1)(D));

- 2 levels are added for obstruction of the administration of justice (§3C1.1));

- **Total adjusted offense level:  15.**

Under the U.S.S.G., and allowing for a criminal history of Category I, the range of punishment is 18 to 24 months.

<u>Conclusion</u>

For the reasons set forth herein, in the Government's original, and in the first supplemental memoranda in aid of sentencing, the government believes that anything less than a significant sentence of incarceration would undermine public confidence in the judicial system.  The defendant has "produce[d] false, altered, or counterfeit document[s] . . . during an official investigation or judicial proceeding" (*see* USSG §3C1.1, Application Note 4(c)), and has "provided materially false

-19-

information to a judge" (*id.*, Application Note 4(f)).  This fraud

upon the Court follows her commission the original, very serious

fraud.  It is the government's view that a sentence within the

range of 18 to 24 months is more than appropriate and reasonable.

Respectfully Submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar Number 498610

/s/

By: _____

BARBARA E. KITTAY
D.C. Bar Number 414216
Assistant U.S. Attorney
555 Fourth Street, N.W., Rm. 4846
Washington, D.C.  20530
Tel. (202) 514-6940
Barbara.Kittay@usdoj.gov