# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Cr. No. 07-035 (RWR)** |
| | : | |
| **SUSAN L. JACKSON,** | : | |
| | : | |
| **Defendant** | : | |

## MS. JACKSON'S SECOND SUPPLEMENTAL SENTENCING MEMORANDUM

Ms. Jackson, through undersigned counsel, respectfully submits the following supplemental information for the Court in response to the government's request that Ms. Jackson's base offense level be increased pursuant to U.S.S.G. § 3C1.1 for obstruction of justice and in addition, deprive Ms. Jackson of her acceptance of responsibility points pursuant to U.S.S.G. § 3E1.1.

## BACKGROUND

On June 22, 2007, Ms. Jackson filed a sentencing memorandum which contained seven different numbered exhibits. Exhibit number three included nineteen letters written by family and friends in support of Ms. Jackson; and exhibit number seven included six letters written by co-workers or employers in support of Ms. Jackson. On June 26, 2007, the government reviewed the sentencing memorandum filed on behalf of Ms. Jackson and found some of the letters contained in exhibits three and seven suspect. On June 27, 2007, the government filed a supplemental sentencing memorandum indicating that some of the letter writers in support of Ms. Jackson disclaimed portions of their submitted letters. In this supplemental memorandum, the government requested that a two-level enhancement for obstruction of justice be imposed,

pursuant to § 3C1.1., and requested that Ms. Jackson be denied a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1.  On June 28, 2007, undersigned counsel filed a supplemental sentencing memorandum in response to the government's filing of June 27, 2007.

On June 29, 2007, the parties appeared before this Court for sentencing, at which time undersigned counsel asked for a continuance in order to effectively prepare to defend against the government's allegations that Ms. Jackson obstructed justice by altering several letters that were submitted to this court in her sentencing memorandum dated June 22, 2007.  The Court then set an evidentiary hearing for September 14, 2007, so that the government could establish an evidentiary basis for the enhancement of obstruction of justice and the removal of acceptance of responsibility points.

## I.     EVIDENTIARY HEARING ON SEPTEMBER 14, 2007

### A.     Lt. William Waithe

On September 14, 2007, Lieutenant William Waithe of the Forest Heights Police Department testified about writing a letter on behalf of Ms. Jackson.  He testified that on April 19, 2007, he wrote a brief letter in reference to Ms. Jackson's character (which was admitted as Defense Exhibit Number 1). <u>See</u> Transcript of September 14, 2007, pg. 28[1].  Lt. Waithe further testified that he received additional instructions via an e-mail from Ms. Jackson which identified that Ms. Jackson pled guilty to the offense of wire fraud sometime near the date of April 27, 2007 (which was admitted as Defense Exhibit Number 2).  <u>See</u> 9/14/07 TR pg. 29-31.  Lt. Waithe testified that as of the date of April 27, 2007, he was aware that Ms. Jackson had pled

---

[1]  The transcript of the evidentiary hearing held on September 14, 2007, will be referred to as 9/14/07 TR.

2

guilty to the offense of wire fraud.  See 9/14/07 TR pg. 31.

As previously submitted by undersigned counsel in the Supplemental Sentencing Memorandum attached as Exhibit Number 1, Lt. Waithe testified that he authored this letter and not the letter that was originally submitted on June 22, 2007.  (This letter was also admitted as Government Exhibit Number 1).  When asked by defense counsel if he still stood by the initial letter he authored in support of Ms. Jackson (admitted as Government Exhibit Number 1), Lt. Waite responded affirmatively.  See 9/14/07 TR pg. 33.  In addition, on re-direct by government counsel, Lt. Waithe indicated that in light of all of his testimony he still believed Ms. Jackson to be of strong character.  See 9/14/07 TR pg. 34.

### B.    Mary Privitera

On September 14, 2007, Ms. Mary Privitera - Ms. Jackson's employer at Pizza Italia - testified that she authored the letter written on letterhead with the date of April 22, 2007 (which was submitted by undersigned counsel in the Supplemental Sentencing Memorandum attached as Exhibit Number 2, page 3).  Ms. Privitera further testified that she was not made aware of the two additional letters submitted in Ms. Jackson's Supplemental Sentencing Memorandum attached as Exhibit Number 2, pages 1 and 2, until sometime between June 26, 2007 and June 28, 2007.  See 9/14/07 TR pg. 60.

Ms. Privitera further testified that from the date of June 28, 2007, she was made aware of all three letters (which were also admitted as Government Exhibits 6, 7, and 8).  See 9/14/07 TR pg. 61.  Effective June 28, 2007, Ms. Privitera testified that she adopted, agreed with, and stood by all three letters in support of Ms. Jackson.  See 9/14/07 TR pg. 61-2.

### C.    Frank Privitera

Mr. Frank Privitera, the husband of Ms. Privitera, who also employs Ms. Jackson at Pizza Italia, testified on September 14, 2007.  Mr. Privitera had not submitted a letter in support of Ms. Jackson.  However, Mr. Privitera testified that Ms. Jackson had previously disclosed to him that she fraudulently took money and that she was the only one involved.  See 9/14/07 TR 68.

### D.    Maynard Smith

Mr. Smith testified that he authored the first two paragraphs of the letter that was submitted on his behalf.  See 9/14/07 TR 83.  He further testified that he never writes the letters of recommendation himself, rather he asks the person requesting the letter to write the letter and then submit it to him for his approval.  See 9/14/07 TR pg. 96.  In addition, Mr. Smith testified that he does hundreds of recommendations a year.  See 9/14/07 TR pg. 92 & 98.  Specifically, Mr. Smith stated that his recollection about the details regarding Ms. Jackson's recommendation letter may not be accurate due to the volume of recommendation letters he is involved with.  See 9/14/07 TR pg. 98-99.  Finally, Mr. Smith testified that there may have been an exchange of e-mails between him and Ms. Jackson, but he was certain that there was at least one conversation about a letter being changed.  See 9/14/07 TR pg. 100-1.

### E.    Lola Stevens and Sherelle DeWitt

The government had subpoenaed Ms. Stevens and Ms. DeWitt to testify at the hearing on September 14, 2007, but due to time constraints their testimony was not heard.  It is undersigned counsel's understanding that both of these witnesses have been subpoenaed to testify on December 19, 2007.  Undersigned counsel believes Ms. Stevens will testify that she authored the letter submitted by her in support of Ms. Jackson.  Undersigned counsel received a notarized and

signed letter by Ms. Stevens indicating that she did in fact write the letter submitted on behalf of Ms. Jackson. Undersigned counsel believes that Ms. DeWitt will testify that she gave Ms. Jackson permission to re-write her character letter but was unaware of the changes that were made.

F.    **Jack Young**

Mr. Young was Ms. Jackson's civil attorney in early 2006 when the victim in this case - Pundit Production, Inc., - and Ms. Jackson were in negotiations of repayment. Undersigned counsel had requested that Mr. Young testify at the evidentiary hearing in this case for the proposition that Ms. Jackson accepted responsibility for her actions in the early part of 2006. As evidenced by his signed letter which was submitted to this Court in Ms. Jackson's original sentencing memorandum as Exhibit Number 2, Mr. Young recites what occurred prior to her case being referred to the U.S. Attorney's Office for prosecution.

Upon learning of the new evidentiary hearing date of December 19, 2007, undersigned counsel again requested Mr. Young's presence and testimony at this hearing. Unfortunately, however, Mr. Young advised undersigned counsel that he would be unavailable on December 19, 2007, due to his required court appearances in Arlington County Circuit Court, in Arlington, Virginia. Upon learning of his unavailability, undersigned counsel contacted the government, via email, to determine whether or not there was any outstanding dispute as to the authenticity of his letter or what was stated in the original sentencing memorandum regarding the process of what occurred before this case was referred to the U.S. Attorney's Office. Government counsel indicated a likelihood that it wouldn't be a problem to stipulate; however a final answer from government counsel has yet to be received.

I.    **THE OBSTRUCTION OF JUSTICE ENHANCEMENT SHOULD NOT APPLY IN THIS CASE**

The government has requested that Ms. Jackson's base offense level be increased two levels under the obstruction of justice enhancement, pursuant to U.S.S.G. § 3C1.1. Section 3C1.1. of the Guidelines provides for a two-level increase in a defendant's offense level if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or *sentencing of the instant offense of conviction*." (Emphasis added). The Commentary to § 3C1.1 offers examples of such obstructive conduct as "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding" and "providing materially false information to a judge or magistrate." Application Notes 4(c) and (f).

The government argues that a two-level enhancement should be imposed because at least three authors of letters submitted on behalf of Ms. Jackson were altered or expanded upon without the author's permission. However, these letter alterations must be material. See U.S.S.G. § 3C1.1, Application Note 4(f) and 6. "Material" means "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." See U.S.S.G. § 3C1.1, Application Note 6. In this case, the alterations made are not "material," meaning that, these alterations would not influence or affect this Court making a sentencing determination. See United States v. DeFelippis, 950 F.2d 444 (7th Cir. 1991) (false information supplied by defendant was not "material information," thus precluding addition of two points for obstruction of justice). (See also United States v. Horn, 113 Fed. Appx. 355 (10th Cir. 2004) (portion of letter requesting girlfriend to prevent others from reporting any transgressions to his

second girlfriend did not warrant two-level enhancement); and (United States v. Salim, 287

F.Supp.2d 250 (S.D.N.Y. 2003) (defendant's false statements concerning motive for attack on

corrections officer were not material for purposes of determining applicability of obstruction of

justice enhancement)).

      In asserting that the altered letters submitted on Ms. Jackson's behalf are material, the

government primarily relies upon United States v. Roche, 321 F.3d 607 (6th Cir. 2003) and

United States v. Brennan, 326 F.3d 176 (3d Cir. 2003).[2]  The circumstances and facts of these

two cases are completely apposite to the facts of this case.  In Roche, Mr. Roche appealed his

sentence after pleading guilty to obstruction of justice for submitting false documents at his

sentencing for a bank robbery conviction.  Id. at 608.  All letters submitted on behalf of Mr.

Roche for use at his sentencing in the bank robbery case were fabricated and none of them were

authentic.  Id. at 608.  These fabricated letters included a letter from the mother of his children; a

character reference from an administrator at a battered women's shelter; and a letter verifying his

place of employment together with confirming employment documents.  Id.  The sentencing

judge relied upon these letters in granting Mr. Roche's downward departure request.  Id. 608-9.

The Sixth Circuit affirmed the district court's finding that the false documents submitted by Mr.

Roche at his bank robbery sentencing constituted obstruction of justice and affirmed the two-

level enhancement pursuant to § 3C1.1.  Id.

      In Brennan, less than a week before his money laundering trial, Mr. Brennan submitted

---

[2]  The government also cites to three unpublished decisions concerning obstruction of
justice and forged letters.  However, none of these cases have any information, discussion or
analysis as to what these documents were or what they purported to say.  See United States v.
Dringle, 43 Fed. Appx. 112 (9th Cir. 2002); United States v. Schweitzer, 14 Fed. Appx. 832 (9th
Cir. 2001); and United States v. Coger, 58 Fed. Appx. 575 (4th Cir. 2003).

fabricated letters to the government as reciprocal discovery. Id at 199. The government investigated these letters and believed that Mr. Brennan created these letters in an attempt to give a legitimate explanation for an amount of money. Id. The government, at trial, submitted evidence contrary to these documents, in addition to the testimony of three witnesses. Id. Ultimately, Mr. Brennan decided not to use the letters as evidence in his case. Id. At sentencing, the court enhanced Mr. Brennan's sentence two levels for obstruction of justice in light of its conclusion that Mr. Brennan fabricated these letters. Id. at 200. The Third Circuit upheld the district court's findings supporting the obstruction of justice enhancement and as such affirmed the two-level enhancement pursuant to § 3C1.1. Id. at 201.

Clearly, the facts of Ms. Jackson's case are very different from the cases cited to by the government. To begin, the questioned letters were submitted to this Court for use at her sentencing hearing - not in preparation for trial as seen in Brennan. Second, all of the letter writers in question have testified that they were asked by Ms. Jackson to submit a letter on her behalf. At best, the evidence demonstrates that two letters were altered without the letter writer's permission; while another witness testified that she did not author any of the letters at the time they were submitted to this Court but now adopts and stands by what the letters purport. In light of the record in this case, Ms. Jackson's sentence should not be enhanced for obstruction of justice. As a result, Ms. Jackson is also entitled to acceptance of responsibility.

## II.    MS. JACKSON'S OFFENSE LEVEL SHOULD BE REDUCED FOR ACCEPTANCE OF RESPONSIBILITY

Ms. Jackson submits that the obstruction of justice enhancement, pursuant to § 3C1.1, should not apply in this case. However, if this Court does apply the obstruction of justice

8

enhancement, Ms. Jackson still maintains that her base offense level should be reduced by two

levels for her acceptance of responsibility, pursuant to § 3E1.1.

Under U.S.S.G. § 3E1.1, Application Note 4, "[c]onduct resulting in an enhancement

under § 3C1.1 ordinarily indicates that the defendant has not accepted responsibility for his

criminal conduct.  There may, however, be extraordinary cases in which adjustments under both

§§ 3C1.1 and 3E1.1 may apply."  U.S.S.G. § 3E1.1, Application Note 4.  "The sentencing judge

is in a unique position to evaluate a defendant's acceptance of responsibility.  For this reason, the

determination of the sentencing judge is entitled to great deference on review."  U.S.S.G. §

3E1.1, Application Note 5; United States v. Barry, 961 F.2d 260, 266 (D.C. Cir. 1992) (quoting

same).

To evaluate whether Ms. Jackson's case is extraordinary under § 3E1.1, Application Note

4, her case must be compared to those cases involving an enhancement for obstruction of justice,

as those cases collectively define the "ordinary" case involving obstruction of justice.  In other

words, as a starting point, a defendant in one of the cases implicated by Application Note 4 will

always have done something to "willfully obstruct[] or impede[] . . . the administration of justice

during the investigation, prosecution or sentencing of the instant offense of conviction."

When compared to other cases where defendants obstructed justice, it is clear that Ms.

Jackson's case is an extraordinary one where a reduction for acceptance of responsibility is

entirely appropriate.  Primarily, there is the nature of Ms. Jackson's obstructive conduct.  A

survey of the cases in this Circuit and others demonstrates that obstruction of justice, in the

"ordinary case," involves far more obstructive and harmful conduct than anything done by Ms.

Jackson.  Significantly, in several cases cited below, the defendant was still awarded a reduction

for acceptance of responsibility despite obstruction conduct.  See, e.g., United States v. Dilliard, 370 F.3d 800, 805 (8th Cir. 2004) (defendants threatened witness on multiple occasions and discussed killing witness; witness was killed); United States v. Campos, 362 F.3d 1013, 1017 (8th Cir. 2004) (defendant made false statements throughout investigation, committed perjury at trial, and continued to deny guilt on first appeal; "[t]his form of obstruction of justice was an ongoing effort to thwart his prosecution rather than an isolated incident"); United States v. Weaver, 265 F.3d 1074, 1078 n.5 (D.C. Cir. 2001) (defendant still awarded acceptance deduction after conviction for obstruction of justice offense under 18 U.S.C. § 1503); United States v. Root, 12 F.3d 1116, 1119 (D.C. Cir. 1994) (two level reduction for acceptance of responsibility given despite two-level upward departure given to the defendant for  "very serious damage to the . . . governmental process"); United States v. Teyer, 322 F. Supp.2d 359, 365 (S.D. N.Y. 2004) (defendant still received acceptance reduction after he obstructed justice by attempting to bribe government officials in closely related foreign prosecution); United States v. Cimino, 2002 WL 31000001 (S.D.N.Y.) (defendant still received acceptance reduction even after obstructing justice by perjuring himself concerning whether he threatened to have a cooperating witness "whacked," and on other matters); United States v. Johnson, 212 F. Supp. 2d 202, 212 (S.D.N.Y. 2002) (defendant still received acceptance reduction despite giving false statements to court regarding relevant conduct; also noting that "extensive precedent supports granting acceptance of responsibility credit despite obstruction of justice, in appropriate cases," and citing numerous cases involving both adjustments); United States v. Kelly, 169 F. Supp.2d 171, 173-4 (S.D.N.Y. 2001) (defendant still received acceptance reduction despite hindering criminal investigation, suborning perjury and taking case through trial to verdict); United States v. Maurer, 76 F.

Supp.2d 353, 360 (S.D.N.Y. 1999) (still awarding reduction for acceptance despite "the physical

and verbal intimidation" of witnesses, the submission of false affidavits, and false statements to

the probation office); United States v. Makki, 47 F. Supp.2d 25, 30-31 (D.D.C. 1999) (defendant

repeatedly and flagrantly misrepresented his identity to federal officers); United States v. Davis,

797 F. Supp. 672, 673-74 (N.D. Ind. 1992) (defendant still received acceptance reduction despite

obstruction of justice enhancement for willfully destroying evidence and blatantly lying to

investigators).

       In stark contrast to the cases discussed above, many of which involved a reduction for

acceptance of responsibility, stands the instant case.  The basis for the obstruction enhancement

here is that Ms. Jackson altered letters that were written on her behalf for purposes of sentencing.

It should be noted that § 3C1.1 requires that Ms. Jackson's obstructive conduct to have occurred

"willfully."  U.S.S.G. § 3C1.1.  If this Court finds that Ms. Jackson did act willfully, her

obstructive conduct is plainly far less willful than "ordinary" cases of obstruction of justice, most

of which involve witness intimidation, perjury, lying to courts and investigators, and/or other

calculated and premeditated attempts at thwarting prosecution.

       Ms. Jackson's case bears a much closer resemblance to those cases where it appears

undisputed that the defendant receive both adjustments.  See, e.g., United States v. Maccado, 225

F.3d 766, 769 (D.C. Cir. 2000) (imposing both adjustments where defendant's obstructive

conduct was failure to comply with court order for handwriting exemplar in connection with the

underlying pending charges; no appeal of acceptance of responsibility adjustment by

Government); United States v. Calderon, 163 F.3d 644, 645 (D.C. Cir. 1999) (after defendant

absconded before her trial date and was then rearrested seven years later in Puerto Rico, plea

agreement provided for acceptance of responsibility); United States v. Webb, 966 F. Supp. 16, 17 (D.D.C. 1997), rev'd on other grounds, 134 F.3d 403 (D.C. Cir. 1998) (where defendant absconded for eighteen months between sentencing hearings, defendant awarded reduction for acceptance of responsibility, along with obstruction of justice enhancement; Government did not appeal acceptance issue). See also United States v. Gregory, 315 F.3d 637 (6th Cir. 2003) (entitled to downward departure adjustment of offense level for acceptance of responsibility despite receiving enhancement for obstruction of justice).

    This case is also extraordinary compared to others involving obstruction of justice because Ms. Jackson has been cooperative and has admitted her criminal conduct throughout this entire case. To begin, Ms. Jackson worked with a civil attorney - Mr. Jack Young - in an effort to repay Pundit Productions in February 2006. As previously stated in Ms. Jackson's sentencing memorandum, discussions and settlement agreements were proposed but unfortunately an agreement was not made and this matter was referred to the U.S. Attorney's Office in March 2006. Soon after the referral, agents of the Secret Service interviewed Ms. Jackson at her home whereby she gave a written statement admitting her wrongdoing. Approximately one year later in March 2007, Secret Service agents advised Ms. Jackson that she had been indicted at which time she turned herself in to their custody. Ms. Jackson was arraigned on March 2, 2007, and just 28 days later - on March 30, 2007, she pled guilty thereby saving scarce judicial resources. See § 3E1.1, Application Note 2; cf. Makki, 47 F. Supp. 2d at 31;[3] Teyer, 322 F. Supp. 2d at 375 (still awarding reduction for acceptance despite obstruction of justice and fact that defendant plead the morning of trial). Ms. Jackson has always truthfully admitted the conduct comprising

---

[3]        See supra, note 2.

the offense of conviction.  <u>See</u> § 3E1.1, Application Note 1(a).

Thus, given the totality of the circumstances in this case and other cases involving obstruction of justice, it is clear that Ms. Jackson's case is an extraordinary one where she should receive a two-point reduction for acceptance of responsibility.

## CONCLUSION

For the above-stated reasons, the defendant, Susan Jackson, respectfully submits that the Court should impose a two-point reduction for acceptance of responsibility and not impose a two-point enhancement for obstruction of justice.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500